William S. TANNO, Plaintiff-Appellant,

v.

S.S. PRESIDENT MADISON VES; American President Lines, Ltd., Defendants-Appellees.

William S. TANNO, Plaintiff-Appellee,

v.

S.S. PRESIDENT MADISON VES; American President Lines, Ltd., Defendants-Appellants.

Nos. 86–5872, 86–5910.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 8, 1987.

Decided Oct. 15, 1987.

Charlotte E. Costan, Burbank, Cal., for plaintiff-appellant/cross-appellee.

Robert D. Feighner, Long Beach, Cal., for defendants-appellees/cross-appellants.

Before HALL, NOONAN and THOMPSON, Circuit Judges.

NOONAN, Circuit Judge:

William S. Tanno appeals from a denial of a new trial in a Jones Act (46 U.S.C. § 688) and maritime tort action in which the jury found the defendants negligent but gave smaller damages than Tanno sought. The defendants, *S.S. President Madison* and American President Lines, Ltd., cross-appeal, seeking different instructions on contributory negligence if a new trial is granted. We affirm the district court.

## FACTS

Tanno, fifty-three at the time, was a member of a galley crew of the *President Madison,* bound from Kobe for Los Angeles. On March 16, 1984 during a severe storm, with the ship pitching and rolling in heavy seas, Tanno was ordered to clean the ship's freezer boxes. Tanno suggested they wait, but his superior persisted in his order. Tanno began to clean the frozen meat locker. After scrubbing about ten minutes, he slipped, fell backwards and landed on his left elbow.

The ship's purser diagnosed a possible fracture, splinted the arm straight, and wrapped it with bandages. Tanno's arm swelled down to his hand and changed color, becoming black, blue, and yellowish. He was in pain.

Six days after the accident, March 22, 1984, the *President Madison* reached port, and Tanno was taken to the emergency room at San Pedro Peninsula Hospital. He was examined by Leslie James Harris, an orthopedic surgeon. Harris found a dislocation of one of the bones in the elbow. As it dislocated, a piece of bone came off the radial head and left two loose pieces of bone in the joint. Harris proceeded to perform surgery of forty-five minutes duration, removing the fragments of bone, reducing the radial head to its proper position, and repairing the ligament on the outside of the elbow joint. Tanno was discharged from the hospital three days later, on March 25.

Harris saw Tanno again on March 27, examining the surgical wound and changing the splint and again on April 9, 1987, when the wound had healed but, according to Harris, Tanno would still have been feeling pain. Tanno continued to complain of pain in his elbow as late as August 29, 1985 when examined by his own physician, Dr. John Howard, who detected tenderness in the elbow throughout his examination. At no time, however, during the period May 24, 1984—August 29, 1985 did Tanno ask Howard for pain medication.

## PROCEEDINGS

Tanno brought suit against defendants on January 3, 1985. The case was tried before a jury which was asked to bring in a special verdict. The jury found American President Lines, Ltd. negligent and the negligence the legal cause of injury and damage to Tanno. The jury then answered the following question in the following way:

What is the total amount of damage suffered by the plaintiff, the legal cause of which was the incident in question? Indicate as follows:

| | | |
|---|---|---|
| Past Wage Loss: | $34,779.00 | ($1932 00/100 × 18 mos.) (based on 1983 Income) |
| Past Physical Pain and Mental Suffering: | $6,000.00 | ($1,000.00 per day for the 6 days before he was hospitalized) |
| Future Loss of Earning Capacity: | $0 | |
| Future Physical Pain and Mental Suffering: | $0 | |
| Total: | $40,779.00 | |

Judgment was entered on the verdict. Tanno moved for a new trial on the ground that the jury had given inconsistent answers. The motion was denied. Tanno appealed.

## ANALYSIS

■ If a jury answers special interrogatories inconsistently and the answers cannot be reconciled, a new trial must be granted. *Bourque v. Diamond M. Drilling Co.,* 623 F.2d 351, 353 (5th Cir.1980). In this case if all of the statements written on the Special Verdict are taken into ac-

count there is substantial inconsistency. The statement in parentheses as to pain indicates that Tanno was entitled to damages for pain for only the six days at sea. The statement as to lost wages implies that Tanno was found unable to work for eighteen months. Although there is no formal contradiction between the two findings there is an implicit contradiction: it is unlikely in the extreme that one would be unable to work for eighteen months and have had no pain. In addition, the implication of the six days' award that Tanno in fact did not suffer thereafter is contrary to all the evidence the jury heard and a jury finding that he only had pain up to the time of surgery would require a new trial on the issue of damages.

■ We must confront then the question of whether we have such a jury finding. Although the question is not entirely free from doubt, we hold that what the jury put in parentheses is surplusage and must be disregarded. The matter in parentheses was not responsive to the questions asked. The matter was, rather, an attempt to explain the mental processes of the jury. It was equivalent to the jurors testifying as witnesses about their verdict—testimony that would be excluded under Fed.R.Evid. 606(b). The jury here as a whole volunteered information about how its answers might be explained. Public policy has long dictated that such explorations impeaching the result not be tendered or heard. *See Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir.1980); *Domeracki v. Humble Oil & Refining Co.*, 443 F.2d 1245, 1247 (3d Cir.1971).

■ The $6,000 actually awarded by the jury for pain and suffering, if understood as a figure meant to compensate Tanno not only for his six days at sea but also for the pain felt after the surgery, is on the low side, but not so low as to shock the conscience. Tanno produced no evidence of experiencing substantial pain after the operation although his elbow was undoubtedly sensitive and sore. The measurement of pain is inescapably subjective. It is not our function to second guess the triers of fact who heard the plaintiff himself speak of his suffering. *Cf. Korek v. United States,* 734 F.2d 923, 929 (2d Cir.1984).

AFFIRMED.