Debbie **FLOYD**, et al.,
Plaintiffs–Appellants,

v.

Larry **LAWS**, and City of Sherwood, a municipal corporation,
Defendants–Appellees.

No. 89–35208.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1990.

Decided March 20, 1991.

As Amended March 27 and
April 30, 1991.

Thomas J. Sullivan, Tigard, Or., for plaintiffs-appellants.

Ridgway K. Foley, Jr., argued, William D. Peek, Schwabe, Williamson & Wyatt, Portland, Or., for defendants-appellees.

Before WRIGHT, CHOY, and THOMPSON, Circuit Judges.

CHOY, Circuit Judge:

Debbie Floyd and her three children sued Police Chief Larry Laws and the City of Sherwood in federal district court for $250,000 in damages under 42 U.S.C. § 1983. Floyd also filed pendent state tort actions for assault, battery, false arrest,[1] and intentional infliction of mental distress. Floyd raises four issues on appeal, alleging that the trial court, Judge O'Scannlain sitting for Judge Marsh, abused its discretion by (1) issuing a jury instruction on qualified immunity, (2) misstating the law of qualified immunity in its charge to the jury, (3) declaring Floyd's special verdict award of $7,500 to be surplusage, and (4) refusing to enter judgment in her favor and refusing to award her $1.00 in nominal damages. We AFFIRM, in part, and REVERSE and REMAND, in part.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 30, 1986, Floyd was at home babysitting five children, including her two-year-old stepdaughter Crystal. Her husband, Larry Floyd, was away at work. Acting on a complaint from Kimberly Floyd, Crystal's biological mother, Chief Laws went to Larry's home to find out why he had not returned his daughter as scheduled. Although Larry had visitation privileges, his ex-wife Kimberly retained permanent custody of Crystal.

After Laws explained his purpose, Debbie Floyd refused to answer any questions about Crystal's whereabouts. When he asked to see the child, Floyd refused on the ground that Laws had no writ or court order. Laws had a police dispatcher call Larry's workplace, but he was away at a construction site and could not be reached. In the meantime, Laws alleges, Floyd became hysterical and abusive, calling him obscene names. Floyd, on the other hand, alleges that when she tried to enter her home, Laws blocked her way and proceeded to follow her around the yard for forty-five minutes. Laws estimates the encounter lasted only 17 to 18 minutes. Crystal was returned to her mother two hours later.

At trial, the jury returned a special verdict finding that Laws and the City of Sherwood had not violated the constitutional rights of Floyd's three children under 42 U.S.C. § 1983. However, the jury found that Laws and the City of Sherwood had violated Floyd's constitutional rights. The jury accepted Laws's defense of qualified immunity and awarded no damages as to either defendant. The district court instructed the jury that the defense of qualified immunity was not available to the City of Sherwood. As for the state claims, the jury found Laws guilty of assault and false imprisonment, but not guilty of battery and intentional infliction of emotional distress.

After the jury was discharged, counsel for Laws pointed out that the jury's answers to questions 13 and 14 were apparently inconsistent with one another. Question 13 read: "Was plaintiff Debbie Floyd damaged as a result of any of the actions of defendant Laws' found in questions 9, 10, 11, or 12?" [i.e., assault, battery, false

---

1. The special verdict form lists the cause of action as "false imprisonment," not false arrest.

imprisonment, or intentional infliction of emotional distress] To which the jury replied: "No."

After question 13, appeared the following instruction: "If your answer to question 13 is 'No,' do not answer any further questions, but proceed to the end of this form and sign the verdict. If you answered 'Yes' to question 13, proceed to question 14." Question 14 read: "What amount of money will reasonably compensate plaintiff Debbie Floyd for any of the actions of defendant Laws' found in questions 9, 10, 11, or 12?" To which the jury responded: "$7,500.00."

The trial court declared the answer to question 14 to be surplusage because, after replying "No" to question 13, the jury disobeyed the express instructions of the verdict form and answered question 14. Although Floyd prevailed against the City of Sherwood on her constitutional claim, the trial court entered judgment for the defendants, plaintiff to take nothing.

## I.

The question whether the trial court erred, by giving the jury a qualified immunity instruction, is subject to review for an abuse of discretion. *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir.1988). Floyd properly preserved this issue for appeal, under Federal Rule of Civil Procedure 51, by voicing a timely objection to the giving of the jury instruction on qualified immunity. However, Floyd's argument fails on its merits.

■ Government officials performing discretionary functions are entitled to qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Thorsted*, 858 F.2d at 573 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The relevant inquiry, an objective, fact-specific test, is *"whether a reasonable government official could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 641,

107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)) (emphasis added).

In *Thorsted*, 858 F.2d at 573, this court held that the presence of settled law regarding broad constitutional or statutory rights, by itself, is not sufficient to preclude a defense of qualified immunity. Although it may be clearly established, as a matter of constitutional law, that arrests without probable cause are prohibited by the fourth amendment, this general proposition of law sheds no light on whether an official's conduct was objectively reasonable in any given situation. Similarly, in *Anderson* 483 U.S. at 641, 107 S.Ct. at 3039, the Supreme Court held that although it may be clearly established that the fourth amendment prohibits warrantless searches unsupported by probable cause and exigent circumstances, it does not immediately follow from this general conclusion that a particular search was objectively legally unreasonable.

■ In this case, Floyd argues that she alleged violations of four clearly established constitutional rights—"unlawful arrest, use of unreasonable force in making the arrest, interference with her family relations, and intimidation intended to cause her to relinquish a constitutional right." Because these rights are clearly established, Floyd contends, defendant Laws was not entitled to a jury instruction on qualified immunity.

If Floyd's line of reasoning were correct, then any plaintiff could preclude her opponent's qualified immunity defense simply by alleging violations of clearly established constitutional rights. It is precisely this kind of absurd conclusion which the Supreme Court rejected in *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038, and which we rejected in *Thorsted*, 858 F.2d at 573–74. The trial court did not abuse its discretion by issuing jury instruction 28 on qualified immunity. The trial court could reasonably have concluded, upon the facts here presented, that Laws was entitled to raise this defense. *Thorsted*, 858 F.2d at 575.

**1394**

## II. JURY INSTRUCTION ON QUALIFIED IMMUNITY WAS CORRECT STATEMENT OF LAW

█ Whether jury instruction 28 was a correct statement of the law on qualified immunity is a question which we review for abuse of discretion. *Thorsted,* 858 F.2d at 573. Jury instructions need not be perfect to withstand challenge on appeal. The proper inquiry is whether, considering the charge as a whole, the trial court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading. In a civil trial, erroneous instructions "need only be more probably than not, harmless." *Frank Briscoe Co., Inc. v. Clark County,* 857 F.2d 606, 612 (9th Cir.1988), *cert. denied,* 490 U.S. 1048, 109 S.Ct. 1957, 104 L.Ed.2d 426 (1989) (quoting *Coursen v. A.H. Robbins Co.,* 764 F.2d 1329, 1337, *modified,* 773 F.2d 1049 (9th Cir.1985)). Consequently, the trial court enjoys "substantial latitude" in tailoring the instructions. *Thorsted,* 858 F.2d at 573.

Floyd mistakenly contends that to prevail on qualified immunity under *Anderson,* Laws must prove *both* (1) that Floyd's constitutional rights were not clearly established *and* (2) that he relied on some legal authority to support his actions. *Anderson* supports neither of these contentions. First, the proper fact-specific inquiry under *Anderson* is not whether the law is settled, but whether, in light of clearly established law and the information available to him, a reasonable person in Laws's position could have objectively believed his actions to be proper. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039.

█ Second, Laws was not required to prove *both* confusion in the law *and* reasonable reliance on other authority. Rather, he could establish a valid defense by prevailing on either point. For example, even though it is clearly established that probable cause is required under the Constitution to effect a valid warrantless arrest, Laws could still prevail by proving that he reasonably but mistakenly concluded that probable cause was present. *Anderson,* 483 U.S. at 641, 107 S.Ct. at

3039. This mistaken belief may be based on facts or legal authority, but there is no requirement that Laws's mistake stem exclusively from reliance on "some legal authority." In this case, the jury may have been persuaded by the fact that Laws did contact a Deputy District Attorney to discuss the possible crime committed by Floyd when she concealed Crystal's whereabouts.

In contrast to Floyd's mischaracterization of *Anderson,* the district court's instruction on qualified immunity was a clear, concise, and accurate statement of the law in question. In jury instruction 28 the court stated:

Defendant Laws raises the defense of qualified immunity to plaintiffs' constitutional claims. Defendant Laws is entitled to qualified immunity, shielding him from liability, if he establishes that his actions could reasonably have been thought consistent with the rights of plaintiffs' alleged to have been violated.

In order for Defendant Laws to prevail in this defense he must establish that a police officer could reasonably have believed that his conduct in dealing with plaintiff Debbie Floyd was lawful in light of clearly established law and in light of the information defendant Laws possessed. Defendant Laws [sic] subjective beliefs are irrelevant to this defense.

This defense is not available to the City of Sherwood. Thus, if you find that the City of Sherwood has an unconstitutional policy or custom you should find for the plaintiffs.

This instruction correctly expresses the pertinent law of qualified immunity in language almost identical to that found in *Anderson.* The district court did not abuse its discretion in framing this jury instruction.

## III. APPARENT INCONSISTENCIES IN JURY'S SPECIAL VERDICT

A. *Jury returned special verdict under Federal Rule of Civil Procedure 49(a), not general verdict under Rule 49(b).*

█ We must first decide whether to construe the apparent inconsistencies in the

jury's verdict under Federal Rule of Civil Procedure 49(a) or 49(b). Rule 49(a) applies to "special verdicts." A special verdict consists of a list of interrogatories that calls for findings of fact. On the other hand, Rule 49(b) applies to general verdicts, which may be accompanied by special interrogatories. Strictly speaking, the term "special interrogatories" refers only to interrogatories that accompany a general verdict. 76 Am.Jur.2d *Trial* § 1175 (1975); Annotation, *Submission of Special Interrogatories in Connection with General Verdict Under Federal Rule 49(B), and State Counterparts*, 6 A.L.R.3d 438, 440 (1966). Understandably, some appellate opinions incorrectly apply the foregoing terms.

A general verdict commonly appears as a single statement in the following form: "We, the jury in the above-entitled action find for the plaintiff and against the defendant in the amount of $＿＿＿ dollars." 1 Fed. Proc. Forms § 1:1594 (1975). General verdicts, because of their cryptic nature, are unpopular among some jurists. 9 C. Wright & A. Miller, *Federal Practice and Procedure: Civil*, § 2505 (1971) (hereinafter Wright & Miller). Often juries return general verdicts which seem to defy reason, yet courts have no way to monitor the jurors' thinking processes or test their understanding of the law. 5A J. Moore, *Moore's Federal Practice* ¶ 49.02 (2d ed. 1989) (hereinafter Moore). As a result, courts often submit special interrogatories to juries, to establish a factual basis for testing the correctness of verdicts and ascertaining their extent. 76 Am.Jur.2d *Trial* § 1175; 9 Wright & Miller §§ 2505, 2511.

As a practical matter, it seems that the form of a general verdict with interrogatories is virtually indistinguishable from that of a special verdict. 5A Moore ¶ 49.03[2], 49.04; 9 Wright & Miller §§ 2508, 2512. Both may appear simply as a list of questions calling for findings of fact. 1 Fed. Proc.Forms §§ 1:1578, 1615, 1616. Often courts are unable to decide whether a verdict is a special verdict under Rule 49(a) or a general verdict with interrogatories under Rule 49(b). *See generally Halprin v. Mora*, 231 F.2d 197 (3d Cir.1956) (wherein the court analyzed an apparently inconsistent verdict under both rules, found that both produced the same outcome, and treated the distinction as immaterial in this instance).

Juries rendering general verdicts face a dual task. First, they are responsible for finding facts, which are reflected in their answers to special interrogatories. 5A Moore, ¶ 49.02. Second, they must reach a general verdict by applying the law to their findings of fact. 5A Moore, ¶ 49.03[3]. To help the jury reach a general verdict, the court must often provide a very long and detailed explanation of the law. Needless to say, lay jurors are often left confused and befuddled by the court's instructions. 5A Moore, ¶ 49.03[3].

In theory, special verdicts compel the jury to focus exclusively on its fact-finding role. Special verdicts also empower the judge to play a more prominent role by applying the law to the jury's findings of facts. 5A Moore, ¶ 49.02. This arrangement permits the judge to give a minimum of legal instruction to the jurors. 5A Moore, ¶ 49.03[3].

■ As a general rule, the court has complete discretion over whether to have the jury return a special verdict or a general verdict. *Mateyko v. Felix*, 924 F.2d 824, 827 (9th Cir.1991); 5A Moore, ¶ 49.03[1]; 9 Wright & Miller, § 2505. This discretion extends to determining the form of the special verdict, provided the questions asked are "adequate to obtain a jury determination of the factual issues essential to judgment." *Mateyko*, at 827.

■ In the instant case, the district court submitted to the jury a form labelled "SPECIAL VERDICT." During proceedings in chambers, the trial court referred to the form as a "special verdict form." This special verdict consisted of 14 clear and concise interrogatories which appear sufficient to elicit those facts necessary to deciding this case.[2] As noted earlier, special

---

**2.** See Appendix for text of special verdict questions and jury's responses.

verdicts often resemble general verdicts with interrogatories. Neither Rule 49(a) nor 49(b) prescribes precise direction for formulating them. Consequently, as a matter of law, the interrogatories submitted to the jury in this case constituted a special verdict, simply because that is what the trial court declared them to be.

B. *Under* Gallick *this panel must first attempt to reconcile apparent inconsistencies among answers to special verdict questions.*

In *Gallick v. Baltimore & O.R.R. Co.*, 372 U.S. 108, 110, 83 S.Ct. 659, 661, 9 L.Ed.2d 618 (1963), the United States Supreme Court held that, when confronted by seemingly inconsistent answers to the interrogatories of a special verdict, a court has a duty under the seventh amendment to harmonize those answers, if such be possible under a fair reading of them. *Id.* at 119, 83 S.Ct. at 666. A court is also obligated to try to reconcile the jury's findings by exegesis, if necessary. *Id.* Only in the case of fatal inconsistency may the court remand for a new trial. *Id.* at 119–20, 83 S.Ct. at 666–67.

In *Gallick*, an employee sued a railroad for negligently maintaining on its premises a stagnant pool filled with dead and decaying rats and pigeons. While working near the pool, the employee suffered an insect bite on his leg. He subsequently fell ill and was forced to have both his legs amputated. *Id.* at 110, 83 S.Ct. at 661. The jury found, in response to special verdict questions 19 and 21, that the railroad's negligence was the proximate cause of the employee's injuries.

However, the jury also made two findings that were seemingly inconsistent with the rest of its special verdict. In answer to question 20, the jury found that there was no reason for the railroad to anticipate that

maintaining the stagnant pool would probably result in an injury. In answer to question 22, the jury found that there was no causal relationship between "the stagnant water, the dead rats, the dead pigeons, the insect bite and the present physical condition of the plaintiff." *Id.* at 119, 83 S.Ct. at 666.

In *Gallick*, the Court held that the jury's findings of fact were consistent *in light of the jury instructions and in the context of the entire special verdict. Id.* at 121, 83 S.Ct. at 667. The Court gave two reasons to support its conclusion. Each reason, standing alone, was sufficient justification for preserving the special verdict. *Id.* First, the jury's answers could have meant that the insect bite was foreseeable, whereas the resulting illness was unforeseeable. *Id.* at 120, 83 S.Ct. at 666. Thus, one acceptable means of reconciling the special verdict was to assume that the jury interpreted questions 19/21 and 20/22 as addressing two different kinds of foreseeable occurrences. Second, in light of the jury instructions, the jury could have applied an overly narrow concept of foreseeable harm. *Id.* at 121, 83 S.Ct. at 667. Thus, another permissible means of harmonizing the jury's special verdict was to assume that the jury's lay understanding of a particular legal concept differed from the court's.

Under *Gallick*, a trial court has two options when faced with an inconsistent special verdict. First, the court must try to reconcile the answers. Second, only if all attempts at reconciliation fail, the court may order a new trial. Additionally, *Gallick* does not expressly preclude the trial court from resubmitting the special verdict to the jury, provided the jurors have not been discharged. Moreover, this circuit has expressly held that Rule 49(a) does not bar resubmission.[3] *Mateyko*, 924 F.2d at 827. In this case, the third option of resub-

---

3. The circuits are split on this question, with the majority in accord with the Ninth Circuit. *Karl v. Burlington N.R.R.*, 880 F.2d 68, 72–73 (8th Cir.1989); *Santiago–Negron v. Castro–Davila*, 865 F.2d 431, 444 (1st Cir.1989); *Richard v. Firestone Tire & Rubber*, 853 F.2d 1258, 1260 (5th Cir.1988), *cert. denied*, 488 U.S. 1042, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989); *Auwood v.*

*Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 891 (2d Cir.1988); *Stanton by Brooks v. Astra Pharmaceutical Products*, 718 F.2d 553, 575 (3d Cir.1983). However, the Fourth Circuit has held *contra* in *McCollum v. Stahl*, 579 F.2d 869, 871–72 (4th Cir.1978), *cert. denied*, 440 U.S. 912, 99 S.Ct. 1225, 59 L.Ed.2d 460 (1979).

mission was unavailable, because the jury had been discharged before the inconsistency in the special verdict was discovered.

Floyd does have a strong argument that the actions of the trial court constituted an abuse of discretion. The district court did not attempt to reconcile the inconsistency between the answers to questions 13 and 14. Rather, the court entered judgment based on the answer to question 13 and rejected the answer to question 14, altogether, as surplusage. Nor did the court grant Floyd's motion for a new trial.

■ The holding in *Gallick* implies that, under Rule 49(a), the trial court simply cannot choose to ignore a legitimate finding that is part of the special verdict. The special verdict reflects the jury's findings of fact, and it would be a violation of the seventh amendment right to jury trial for the court to disregard a jury's finding of fact. The words "reconcile" and "harmonize" imply that the court must treat each legitimate answer as correct and consistent.

C. *Superfluous answers, proffered in violation of trial court's instructions, are not part of special verdict and must be disregarded as surplusage.*

*Gallick* does not specifically address the situation in which a jury proffers superfluous answers in violation of a trial court's express instructions contained on the special verdict form. This appears to be a matter of first impression in this circuit. However, there is authority to support Laws's contention that the answer to question 14 does not constitute a legitimate part of the special verdict because it was proffered in direct violation of the court's instructions. *White v. Grinfas,* 809 F.2d 1157, 1161 (5th Cir.1987) (trial court must ignore subsequent answers, given in violation of instructions, as surplusage); *cf. Tanno v. S.S. President Madison Ves,* 830 F.2d 991, 993 (9th Cir.1987) (trial court must ignore parenthetical comments as surplusage).

■ Together, *Tanno* and *White* stand for the general proposition that the trial court should defer only to legitimate or viable findings of fact. We hold that, as in the case of parenthetical comments, special findings issued in violation of the trial court's express instructions do not constitute legitimate or viable findings of fact. The trial court must therefore dismiss them as surplusage, as a matter of law.

In *Tanno,* 830 F.2d at 992, a jury returned a special verdict finding a shipping line liable for negligence when Tanno, a member of the crew, was injured in rough seas. Tanno was unable to see a physician for six days until the ship reached port. The jury awarded him $34,779 in lost wages and $6,000 for past physical pain and suffering. Alongside these figures on the special verdict form, the jury wrote in parenthetical comments. One comment indicated that the wage loss calculation was based on Tanno's 1983 income of $1932 per month for the eighteen months he had been unable to work. The other comment indicated that the pain and suffering calculation was based on a figure of $1000 a day for each of the six days before Tanno saw a doctor.

This court observed in *Tanno* that the parenthetical comments exposed an implicit contradiction in the jury's awards. All the evidence presented to the jury indicated that Tanno had suffered pain for a far longer period than six days. Rather than order a new trial on the issue of damages, we held that *"what the jury put in parentheses is surplusage and must be disregarded."* *Id.* at 993 (emphasis added). The parenthetical comments, we reasoned, were not responsive to the special verdict questions. *Id.*

In *White,* 809 F.2d at 1161–65, the Fifth Circuit reviewed what appears to be a special verdict consisting of 19 questions. The questions are reproduced in an appendix to the decision. The court referred to the special verdict questions as "special interrogatories." Assuming that the court simply misused the term "special interrogatory," this case is directly on point. The opinion makes no explicit reference to the verdict as either a general verdict or a special verdict.

In 1979, plaintiffs Peter and Molly White sold an apartment complex to the Grinfases. The Grinfases sued the Whites in 1980 for fraud in inducing them to buy a structurally defective complex. In 1981, the couples signed a settlement agreement and mutual release and dismissed the suit with prejudice. In 1984, the Grinfases defaulted on their loan. The Whites sued seeking payment and the Grinfases counterclaimed, charging that the Whites fraudulently induced them to buy a structurally defective apartment complex. In this second suit the Grinfases apparently alleged additional latent defects. *Id.* at 1159.

At trial, the jury returned an inconsistent verdict. In question 2, the jury found that the complex was structurally defective. However, in question 3, the jury found that the Whites did not know of the defects when they signed the release in 1981. The jury then answered questions 5, 8, and 14 in violation of the instructions contained on the verdict form. In question 5 the jury appeared to have found that the Whites withheld information of the structural defects with intent to defraud. It seems that the jury simply misunderstood this question because of the way it was worded.[4] In question 8 the jury found that the Whites did not know of the structural defects when they sold the complex in 1979. In question 14, the jury found that the Whites had no intent to defraud the Grinfases. *Id.* at 1162–64.

The court deemed the inconsistency between questions 5 and 14 to be irrelevant. It held that, *"if the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions."* *Id.* at 1161 (emphasis added). Thus, the court affirmed the judgment in favor of the

Whites on the basis of the answer to question 3.

 Similarly, in the case here, the court expressly stated on the special verdict form that the jury should not proceed to question 14 if it answered "No" to question 13. On the authority of *Tanno* and *White*, we find that the district court did not abuse its discretion by ignoring the answer to question 14 as surplusage.

D. *Where answers to previous questions render answers to subsequent questions superfluous, must trial court disregard subsequent answers as surplusage, even if jury received no instructions for completing special verdict?*

Appellees cite *McCollum v. Stahl*, 579 F.2d 869 (4th Cir.1978), *cert. denied*, 440 U.S. 912, 99 S.Ct. 1225, 59 L.Ed.2d 460 (1979), in support of their argument that we should ignore the jury's answer to question 14 as surplusage. *McCollum* does not apply in this case. In *McCollum*, a jury returned an apparently inconsistent special verdict. In question 1 it found that the plaintiff had not been wrongfully discharged. In question 2 it awarded plaintiff no damages. In question 3 it found that plaintiff's discharge had been malicious. In question 4 it awarded the plaintiff $15,-000 in punitive damages. The trial court assumed that the inconsistency had arisen because it had failed to instruct the jury to skip questions 2, 3, and 4 if they found, in question 1, that the plaintiff had not been wrongfully discharged. *Id.* at 870.

The trial court resubmitted the questions to the jury. This time, the jury found that the plaintiff had been wrongfully discharged, awarded damages of $3,750, found that the discharge had been malicious, and awarded $3,750 in punitive damages. *Id.* at 870–71. The Fourth Circuit held that resubmission was improper under

---

**4.** Question 5 read: "Do you find from a preponderance of the evidence that the structural information was not disclosed by Plaintiffs with the intention of inducing Defendants into entering the Settlement Agreement and Mutual Release?" The jury's response was: "We do." It seems that the jury incorrectly understood the question to be asking: "Do you find that plaintiff's nondisclosure of the defects was innocent and not motivated by intent to defraud?" The trial court understood the question to be asking: "Do you find that the plaintiff concealed or failed to disclose the defects with intent to defraud?"

Rule 49(a) and that judgment should have been entered for the defendant on the basis of the first answer to question 1. The subsequent answers were surplusage as a matter of law, the court held, even though the trial court had failed to properly instruct the jury. *Id.* at 871.

The act of resubmission, the Fourth Circuit reasoned, constituted an invitation to the jurors to provide legal rationalization for an outcome which their findings of fact had already precluded. The court pointed out that the purpose of Rule 49(a) was to limit the jury's role to that of fact-finder. *Id.* As a consequence, Rule 49(a) prevents juries from altering their findings of fact simply to produce legal outcomes which they deem desirable.[5]

*McCollum* does not apply to the instant case because, here, the jury violated the district court's express written instructions contained on the special verdict form itself. Therefore, we need not decide whether to follow *McCollum*, wherein the court did not issue any such instructions, either written or oral, to skip a certain question on the verdict form.

### E. *Trial court properly ignored answer to question 14 as surplusage.*

In light of *Tanno* and *White*, we need not consider the question of how to reconcile the apparent inconsistency between questions 13 and 14. Floyd presents three alternative ways to explain the inconsistency. First, the jury might have misunderstood the court's instructions on damages. Second, the jury foreman might have inadvertently marked the wrong box in response to question 13. Third, the jury might not have understood that, as a matter of law, it could not compensate Floyd unless she had actually suffered damages as a result of Laws's conduct.

■ The second proposal is an impermissible approach to reconciliation under *Gallick.* As we read *Gallick*, the court may not resolve inconsistencies by declaring that any one question has been incorrectly marked. It may only hypothesize that the jury misunderstood a phrase or misinterpreted a question. The court must assume that the jury consciously and correctly responded to each question and instruction. Assuming each answer is correctly marked, the court must then try to explain the apparent inconsistency in light of the jury instructions and the special verdict as a whole.

The first and third options appear equally likely. In the instant case, the jury may indeed have been confused about the meaning of actual and nominal damages. On the other hand, the jury may simply have wished to compensate Floyd as an act of charity, although it fully understood that Laws's actions resulted in no actual harm to the plaintiffs.

As the facts of *McCollum* demonstrate, it is difficult for a reviewing court to divine what the intent of the jury might have been. In any event, the legal precedents cited here do not permit this court to indulge in speculation as to the jury's motives. Here, the jury found, in response to question 13, that Floyd had not been damaged by Laws's conduct. The jury then proffered an answer to question 14 in violation of the trial court's express instructions, which had been clearly printed on the special verdict form.

Assuming, as this court must under *Gallick,* that the jury correctly answered question 13, that answer disposed of the legal issue before the trial court and obviated the need for any further finding of fact. At that point, the trial court was bound by law to disregard any answer to question 14 as surplusage. Consequently, the award of $7,500 never became a part of the special verdict, and the trial court was faced

---

5. The circuits are split on the question of whether a district judge abuses his discretion when he informs a jury of the effect of its answers to special verdict interrogatories. On the one hand, too much information may enable juries to engineer the legal outcome which they prefer. On the other hand, if kept in the dark, juries may persist in speculating and could guess wrong about the law. *Causey v. Zinke* (*In re Aircrash in Bali, Indonesia*), 871 F.2d 812, 815 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 277, 107 L.Ed.2d 258 (1989); 9 Wright & Miller, § 2509.

with no apparent inconsistency in the special verdict. We AFFIRM the district court's denial of Floyd's Rule 60(b) motion to "reconsider" Floyd's 59(e) motion to "amend the verdict."

## IV. PLAINTIFF FLOYD ENTITLED TO JUDGMENT AND NOMINAL DAMAGES

### A. *Relevant procedural history below.*

| | |
|---|---|
| 09/23/88 | Jury returned special verdict. |
| 09/27/88 | Floyd filed Rule 59(e)? motion to amend the "verdict." 6 |
| 09/28/88 | Special verdict entered. |
| 10/14/88 | Judge Marsh denied motion to amend the "verdict." |
| 10/18/88 | Judge Marsh ordered judgment for both defendants, plaintiff Floyd to take nothing. |
| 10/20/88 | Judgment entered. |
| 10/28/88 | Floyd filed a Rule 60(b) motion to reconsider the judgment or, in the alternative, for a new trial under Rule 59(a). |
| 02/15/89 | Judge O'Scannlain signed an order denying Floyd's motions. |

### B. *Standards of Review.*

 A trial court's denial of a Rule 59(a) motion for a new trial is reviewed for abuse of discretion. *Ortiz v. Bank of America Nat. Trust & Sav. Ass'n*, 852 F.2d 383, 388 (9th Cir.1987). Similarly, this circuit reviews the denial of a Rule 59(e) motion to amend the judgment for abuse of discretion. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).

 A district court's denial of a Rule 60(b) motion for relief from judgment due to mistake or newly discovered evi-

dence is reviewed for abuse of discretion. *Molloy v. Wilson*, 878 F.2d 313, 315 (9th Cir.1989). An appeal from a denial of a Rule 60(b) motion brings up only the denial of the motion for review, not the merits of the underlying judgment. *Id.*

### C. *Issues II and III are properly before this court.*

 Laws advances three arguments in support of his contentions that the issue of improper entry of judgment, nominal damages, and attorney's fees are not properly before this court. According to Laws, Floyd is not entitled to review of the underlying judgment because she has appealed from a Rule 60(b) motion to reconsider the judgment. *Molloy*, 878 F.2d at 315. This argument is incorrect.

In this case, Floyd is appealing from the underlying judgment entered on 10/20/88, and not from the 60(b) motion to reconsider of 10/28/88. This is because Floyd's 59(a) motion for a new trial tolled the time for filing a notice of appeal in accordance with Federal Rule of Appellate Procedure 4(a)(4).[7]

 As a general rule of federal practice, any question which has been presented to a federal district court for a ruling and which has not thereafter been waived or withdrawn is preserved for review. *Ballantine v. C.R.R.*, 460 F.2d 540, 544–45 (3d Cir.), *cert. denied*, 409 U.S. 879, 93 S.Ct. 133, 34 L.Ed.2d 133 (1972) (question of improper jury instruction); *United States v. Hayashi*, 282 F.2d 599, 601 (9th Cir.1960) (question of damages in non-jury trial); 11 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2818

---

**6.** Judge O'Scannlain's opinion and order of February 14, 1989, denying plaintiff's motions, referred to this motion as a motion to amend the "verdict." The docket sheet also lists this 9/27/88 motion as a motion to amend the "verdict." The motion referred to was probably a Rule 59(e) motion to amend the judgment. However, Laws made this motion prior to entry of judgment. This may have been a Rule 50(b) motion for judgment notwithstanding the verdict (JNOV), but if so, it would have been improper because Floyd failed to make a prior motion for a directed verdict. There is no indication in the record that the trial court, on its own motion, directed a verdict for defendants and entered JNOV thereupon pursuant to Rule 50(b).

**7.** "If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: ... (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion." Fed.R.App.P. 4(a)(4).

(1973 & Supp.1990) (construing appellate review of Rule 59 motions). A question raised and ruled upon need not be raised again on a motion for a new trial to preserve it for review. *Johnson v. United States*, 780 F.2d 902, 906–07 (11th Cir.1986) (question of damages in non-jury trial).

Second, Laws correctly points out that Floyd herself proposed the wording of jury instruction No. 38 on nominal damages.[8] Laws contends this erroneous instruction constituted invited error which we may not review on appeal. *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir.1986), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986) (where criminal defendant himself proposes erroneous jury instruction, review of the instruction is barred by doctrine of invited error); *cf. DeLand v. Old Republic Life Ins. Co.*, 758 F.2d 1331, 1336–37 (9th Cir.1985) (doctrine of invited error applicable in context of civil jury trial).

▮▮▮ The trial court's instruction on nominal damages was an incorrect statement of the law and amounted to invited error.[9] Nevertheless, this question of invited error is irrelevant. We are concerned not with the accuracy of the jury instruction on nominal damages, but rather with the trial court's erroneous decision to enter judgment for both defendants. Note that in spite of the erroneous instruction on nominal damages, the jury found for plaintiff Floyd and against defendant the City of Sherwood. On the basis of this verdict, the trial court entered judgment for both defendants, Police Chief Laws and the City of Sherwood.

Third, Laws argues that Floyd's request for attorney's fees, pursuant to 42 U.S.C. § 1988, was untimely. This is incorrect in light of *White v. New Hampshire Dept. of Empl. Sec.*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), and *Metcalf v. Borba*, 681 F.2d 1183, 1184–86 (9th Cir.1982). *White* involved a section 1983 action in which the complaint did not specifically request attorney's fees. *Id.* 455 U.S. at 447, 102 S.Ct. at 1164.

In *White*, the Supreme Court held that the section 1988 request for attorney's fees was timely, although filed four and one-half months after entry of final judgment. *Id.* at 448, 102 S.Ct. at 1164. The Court also held that a section 1988 request for attorney's fees is not subject to the ten-day limit for Rule 59(e) motions to alter or amend the judgment. *Id.* at 452, 102 S.Ct. at 1166. In *Metcalf*, 681 F.2d at 1184, 1187, this court followed *White* in holding that a section 1988 motion for attorney's fees was timely although it was filed twenty-five days after entry of judgment.

D. *Even if jury awards zero actual damages, judgment and $1.00 nominal damage award are mandatory if plaintiff proves violation of her constitutional right.*

Floyd correctly cites *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), for the proposition that a plaintiff in a civil rights action under section 1983 is entitled to nominal damages as a matter of law if she obtains a favorable jury verdict. *Carey* involved a suit by two students under 42 U.S.C. § 1983. They charged that school officials had suspended them without due process of law. At trial, the court found that the students had indeed been denied procedural due process. *Id.* at 251, 98 S.Ct. at 1046. However, because plaintiffs failed to prove actual harm, the trial court awarded no damages.

On appeal, the question before the Court was whether a section 1983 plaintiff must

---

**8.** Jury instruction 38 provided: "If you determine from the evidence that the plaintiffs have established that a legal right of theirs has been violated by the defendants, but that they have sustained no actual damage, or that they have not established actual damage, you may return an award of nominal damages to the plaintiffs.

The award of a nominal sum on account of actual damages would not preclude your awarding punitive damages in such amount as you deem appropriate, if you find that the award of punitive damages is justified under these instructions."

**9.** The instruction should have been stated something to the effect that: "If the jury finds that the defendant violated plaintiff Floyd's constitutional right, it must at least award the plaintiff $1.00 in nominal damages."

prove actual harm to receive substantial damages. The Court held that, absent some evidentiary showing, a violation of procedural due process cannot be presumed to have caused actual harm. Nevertheless, the Court stated, because the right to procedural due process is absolute, and should therefore be scrupulously observed, "we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Id.* at 266, 98 S.Ct. at 1053. The Court also held that even if, on remand, the suspensions were found to have been justified, plaintiffs would nevertheless be entitled to nominal damages not to exceed $1.00 on the basis of the violation of their absolute right to due process. *Id.* at 267, 98 S.Ct. at 1054.

In *Farrar v. Cain,* 756 F.2d 1148, 1152 (5th Cir.1985) (citing *Carey v. Piphus,* 435 U.S. at 266–67, 98 S.Ct. at 1053–54), the Fifth Circuit held that it was an abuse of discretion for a trial court not to award nominal damages to a plaintiff who had won a jury verdict showing his fundamental right to have been violated. In *Draper v. Coombs,* 792 F.2d 915, 921–22 (9th Cir. 1986) (citing *Carey v. Piphus,* 435 U.S. at 266–67, 98 S.Ct. at 1053–54), this court held that it was error for a district court to dismiss a plaintiff's section 1983 action simply because he had suffered no actual damages; thus the plaintiff *still had a valid claim for nominal damages.*

Although the language of *Carey* appeared to limit the Court's holding to procedural violations under the Constitution, this court has followed the Tenth Circuit in expressly rejecting any procedural rights/substantive rights distinction in the application of *Carey. Draper,* 792 F.2d at 921–22 (interpreting *Carey* to require mandatory award of nominal damages if plaintiff can prove violation of substantive constitutional right under section 1983). "For purposes of *Piphus,* it does not matter whether the underlying claim involves a deprivation of a procedural or substantive constitutionally based right." *Id.*

At oral argument, counsel for the City of Sherwood stated that the language of *Draper* on nominal damages was permissive, not mandatory. We disagree. The opinion does use permissive language to state that a plaintiff who fails to prove actual damages "still may be entitled to nominal damages." *Draper,* 792 F.2d at 921. However, this language was not intended to indicate that an award of nominal damages was discretionary. Instead, this language merely indicated that the plaintiff in *Draper* had yet to prove his section 1983 claims at trial. Because the trial court had prematurely dismissed the plaintiff's claims, it was as yet uncertain whether plaintiff could prove a violation and secure a favorable verdict. Thus, this court held that the plaintiff had stated valid section 1983 claims for nominal damages, implying that, upon proving his claims, the plaintiff would be entitled to a mandatory award of nominal damages. *Id.* at 922.

In the instant case, the jury found both defendants guilty of violating Floyd's constitutional rights. The jury accepted Laws's defense of qualified immunity, but this defense was not available to the City of Sherwood. In light of *Carey, Draper,* and *Farrar,* we hold that it was an abuse of discretion for the trial court to refuse to enter judgment for Floyd and against the City of Sherwood. It was also an abuse of discretion for the trial court to refuse to award plaintiff $1.00 in nominal damages. In so holding, we reject the holding of the Fourth Circuit in *Ganey v. Edwards,* 759 F.2d 337, 340 (4th Cir.1985), that an award of nominal damages is permissive. Although *Ganey* raised the issue of nominal damages, it did not address the issue of improper entry of judgment.

We hold that neither the judge nor the jury has any discretion in this matter, assuming that the jury has reasonably rendered its verdict for the plaintiff.[10] If the jury finds a constitutional violation, an award of nominal damages is mandatory, not permissive. That a jury might choose to award zero actual damages is irrelevant to the legal question of whether, on the

10. Our review of the record reveals no indication that the trial court intended to enter a judgment notwithstanding the verdict (JNOV) pursuant to Federal Rule of Civil Procedure 50(b).

basis of the jury's verdict, the plaintiff was entitled to judgment and nominal damages. Because Floyd secured a favorable jury verdict on her section 1983 claim against the City of Sherwood, she was legally entitled to judgment with a mandatory nominal damages award of $1.00 as a symbolic vindication of her constitutional right.

## CONCLUSION

We AFFIRM, in part, REVERSE, in part, and REMAND this case to the district court for entry of judgment for Floyd against the City of Sherwood, assessment of nominal damages in the amount of $1.00, and calculation of reasonable attorney's fees in accordance with the procedures set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), *Blanchard v. Bergeron,* 489 U.S. 87, 91 & n. 5, 109 S.Ct. 939, 943 & n. 5, 103 L.Ed.2d 67 (1989), and *Cunningham v. County of Los Angeles,* 879 F.2d 481 (9th Cir.1988). We award Floyd her costs on this appeal.

## APPENDIX

### SPECIAL VERDICT

We, the jury, being first duly empaneled and sworn, do find our verdict as follows:

1. Did defendant Laws violate plaintiff Debbie Floyd's constitutional rights?

Yes (X) No ( )

2. Did defendant Laws violate Jason Floyd's, Sarah Cobb's and Kevin Cobb's constitutional rights?

Yes ( ) No (X)

If your answers to questions 1 *and* 2 are "No," proceed to question 9. If your answer to question 1 *or* 2 is "Yes," proceed to question 3.

3. Did the City of Sherwood violate plaintiffs' constitutional rights?

Yes (X) No ( )

4. Is defendant Laws entitled to qualified immunity from plaintiffs' claims?

Yes (X) No ( )

If your answer to question 3 is "No" *and* your answer to question 4 is "Yes," proceed to question 9. Otherwise proceed to question 5.

5. If plaintiffs' constitutional rights were violated, were plaintiffs damaged as a result?

Yes ( ) No (X)

If your answer to question 5 is "No" proceed to question 9. If your answer to question 5 is "Yes," proceed to question 6.

6. What amount of money will reasonably compensate each plaintiff whose constitutional rights you have found to have been violated by defendants' actions?

[the jury left all four lines blank]

Debbie Floyd $_____

Jason Floyd $_____

Sarah Cobb $_____

Kevin Cobb $_____

7. Should punitive damages be awarded against defendant Laws for violation of plaintiff's constitutional rights?

Yes ( ) No (X) [jury deleted mark] (marked by mistake, void, should have proceeded to number 9)

If your answer to question 7 is "No," proceed to question 9. If your answer to question 7 is "Yes," proceed to question 8.

8. Fill in the amount of punitive damages to be awarded to each plaintiff whose constitutional rights you have found to have been violated:

[the jury left all four lines blank]

Debbie Floyd $_____

Jason Floyd $_____

Sarah Cobb $_____

Kevin Cobb $_____

9. Did defendant Laws' actions constitute an assault?

Yes (X) No ( )

10. Did defendant Laws' actions constitute a battery?

Yes ( ) No (X)

11. Did defendant Laws' actions constitute false imprisonment?

Yes (X) No ( )

12. Did defendant Laws' actions constitute the intentional infliction of emotional distress?

Yes ( ) No ( )

If you answered "No" to questions 9, 10, 11 *and* 12, do not answer any fur-

ther questions, but proceed to the end of this form and sign the verdict. If you answered "Yes" to questions 9, 10, 11 *or* 12, proceed to question 13.

13. Was plaintiff Debbie Floyd damaged as a result of any of the actions of defendant Laws' found in questions 9, 10, 11 or 12?

Yes ( ) No (X)

If your answer to question 13 is "No," do not answer any further questions, but proceed to the end of this form and sign the verdict. If you answered "Yes" to question 13, proceed to question 14.

14. What amount of money will reasonably compensate plaintiff Debbie Floyd for any of the actions of defendant Laws' found in questions 9, 10, 11 or 12?

Debbie Floyd $(7,500.00)

Dated this (23) day of September, 1988.

[signature], Presiding Juror

[Note that any bracketed phrases above reflect editorial comments of this court. Numbers, words, or marks in parentheses reflect entries made by the jury.]