### Phillip S. MOLINA, Plaintiff—Appellant,

v.

### CITY OF OXNARD, Edmund Sotelo, Defendants—Appellees.

No. 04–55173.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 15, 2005.

Filed March 10, 2006.

---

Edward O. Lear, Esq., Los Angeles, CA, for Plaintiff–Appellant.

Karen A. Larson, Esq., Century Law Group, Patricia A. Kinaga, Esq., Jones Day, Los Angeles, CA, for Defendants–Appellees.

Before: BRIGHT,* B. FLETCHER, and SILVERMAN, Circuit Judges.

## MEMORANDUM **

Phillip Molina, the discharged financial manager of the City of Oxnard, brought this civil action for damages. Molina contended that the defendant City and the defendant city manager, Edmund Sotelo, ("defendants") fired him in violation of his First Amendment rights because Molina had criticized the City's financial undertakings and had stated these views to the local newspaper. The defendants claimed Molina was a poor employee and was fired for his incompetency in his job.

After an eight-day trial, the jury returned a special verdict with certain inconsistencies among the answers. The district court resolved the case in favor of the defendants, granting a dismissal of the action, and determining that the inconsistencies—verdict answers which award damages to Molina—were superfluous. Molina appeals.

We determine that the jury returned inconsistent answers to the special verdict questions that cannot be resolved in favor of either party. We reverse and remand for a new trial on Molina's First Amendment claim.

---

* The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

## I. BACKGROUND

The district court instructed the jury that to prevail on his First Amendment claim, Molina needed to show that his statements on the financial status of the City's golf course, which addressed a matter of public concern, influenced the defendants' decision to terminate his employment. (Jury Inst. 16.) Further, as a defense, the jury needed to find "the same decision would have been reached to terminate [Molina's] employment even in the absence of [his] protected speech." *Id.*

If the jury found for Molina, it was to award damages to compensate him for "any injury ... caused by the defendant[s]." (Jury Inst. 24.) Specifically, the jury was instructed to "[d]ecide the amount that plaintiff would have earned up to today" and "[a]dd the present cash value of any future wages and benefits that he would have earned for the length of time the employment with the City of Oxnard was reasonably certain to continue...." *Id.*

The jury returned a special verdict form with apparent inconsistencies among the answers. In question one, the jury concluded that Molina's statements to the local newspaper regarding the finances of the public golf course influenced the defendants' decision to terminate him. In question two, the jury found Molina "would have been terminated even in the absence of [his] protected speech." The verdict form instructed the jury not to answer question three if it answered affirmatively in question two, but the jury continued to answer the special verdict questions and found that Molina suffered injury as a result of being terminated in violation of his First Amendment rights. In answer-

ing question six, the jury awarded Molina damages "to fairly compensate [him] for: (a) lost salary: $409,343.16 [and] (b) lost fringe benefits: $186,492.84." [1]

On receiving the special verdict, the district court suggested that counsel agree on an instruction or inquiry to resolve any possible inconsistency. The parties could not agree on a further question to the jury. The court then dismissed the jury. Post-trial and following briefing, the court entered judgment for the defendants, concluding that the jury's award of damages was superfluous in light of its other answers. Molina appealed.

## II. DISCUSSION

We review a district court's determination that a jury's verdict is internally inconsistent de novo. *El–Hakem v. BJY Inc.,* 415 F.3d 1068, 1072 (9th Cir.2005). "The district court's actions subsequent to such a decision are reviewed for abuse of discretion." *Wilks v. Reyes,* 5 F.3d 412, 415 (9th Cir.1993).

The question before us is whether the apparently inconsistent answers in the special verdict can be reconciled to support judgment for Molina or the defendants; if not, a new trial must be granted. *Gallick v. Baltimore & Ohio R.R. Co.,* 372 U.S. 108, 119–20, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *Tanno v. S.S. President Madison Ves.,* 830 F.2d 991, 992 (9th Cir.1987).

The defendants argue that the jury simply determined that they proved their affirmative defense in question two and listed a damages award in question six as mere surplusage. However, as worded, question two does not necessarily bar Molina from recovering damages. The ques-

---

1. In verdict questions four and five, the jury concluded that Molina had not proved claims for intentional and negligent infliction of emotional distress. In question seven, the jury concluded that Molina had not shown "oppression, fraud, or malice" on the part of the defendants. Molina does not challenge these findings on appeal.

tion asked, "Have defendants proved by a preponderance of the evidence that plaintiff's employment would have been terminated even in the absence of plaintiff's protected speech?" This question does not address *when* Molina would have been terminated. Thus, by answering "yes," we know the jury found the defendants were going to terminate Molina's at-will employment at some point even if he had not commented on the financial status of the City's golf course. But the affirmative response does not indicate whether the jury thought that Molina would have been terminated on October 19, 1999, (the date on which he was, in fact, fired) even if he had not exercised his First Amendment rights.

Other instructions and answers further support a conclusion that the jury did not understand and did not answer question two as a complete affirmative defense. In instruction twenty-four, the jury was told: *"If you find for the plaintiff,* you must determine the plaintiff's damages.... Damages means the amount of money which will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant." (Emphasis added.) Consistent with this instruction, the jury awarded Molina $595,836 in lost salary and fringe benefits in question six, which asked: "What damages, if any, do you *award plaintiff to fairly compensate him* ... [?]" (Emphasis added.)

The defendants argue that we should ignore the jury's answer to question six in response to *Floyd v. Laws,* 929 F.2d 1390 (9th Cir.1991). *Floyd* is distinguishable from this case. In *Floyd,* the jury found under question thirteen that the plaintiff suffered no injury "as a result of any of the actions of defendant." *Id.* at 1392–93. The verdict form directed the jury: "If your answer to question 13 is 'No,' do not answer any further questions, but proceed

to the end of this form and sign the verdict." *Id.* at 1393. Ignoring this express instruction, the jury proceeded to question fourteen where it awarded $7,500 in damages. *Id.* This court concluded that the jury's award of damages must be dismissed as surplusage, holding:

> [S]pecial findings issued in violation of the trial court's express instructions do not constitute legitimate or viable findings of fact. The trial court must therefore dismiss them as surplusage, as a matter of law.

*Id.* at 1397.

Under the record presented here, it would be improper to treat the jury's award of damages in question six as illegitimate surplusage. Unlike *Floyd,* the jury was not expressly instructed to skip the damages question. Further, question two is ambiguous. The jury may have concluded in question two that the defendants would have terminated Molina's employment, sometime after October 19, 1999, for reasons unrelated to his First Amendment rights. Consistent with this interpretation, the jury could award damages in question six from October 19, 1999, to the date the jury believed Molina would have been terminated absent his protected speech.

Accordingly, Molina requests we reverse and remand with instructions to enter judgment in his favor for the $595,836 awarded by the jury. Molina explains that under his trial evidence on damages, the jury award represented exactly four years in lost salary and fringe benefits. When the defendants terminated Molina's employment, he was receiving an annual compensation package of $148,959, consisting of salary and fringe benefits. (Molina Op. Br. at p. 5 n. 10 & pp. 24, 40.) Multiplying $148,959 by four years gives the jury's total of $595,836.

The jury instructions help to explain why the jury chose to award four years in damages. In instruction twenty-four, relating to damages, the district court told the jury to

1. Decide the amount that plaintiff would have earned up to today, including any benefits and pay increases; and

2. Add the present cash value of any future wages and benefits that he would have earned for the length of time the employment with the City of Oxnard was reasonably certain to continue; and. . . .

E.R. at 295.

The jury apparently awarded Molina damages for the years following his termination on October 19, 1999, up to his trial in November 2003. Molina suggests the jury mistakenly believed it could not award future damages. For this conclusion, Molina relies on jury note four:

The jury requests the following: Instruction # 24 concerning measure of damages. Item # 1 states that we must decide the amount that plaintiff would have earned up to today. Why must we award damages up to today? Item # 2 allows us to determine the length of time he was likely to be employed.

E.R. at 307.

We cannot reconcile the jury's verdict answers based on this question. The jury's question does not clearly express what meaning, if any, the jury gave to the instructions on past and future damages prior to submitting question four to the court. More importantly, because the jury returned its verdict before the district court answered the question, we do not know how the jury resolved this question about awarding damages.

It seems reasonable to read the jury's verdict answers to award Molina damages to the date of trial, but not beyond that date. This reading is consistent with the instructions if the jury's answers indicate its belief that defendants would have terminated Molina absent his protected speech, and that Molina's statements to the local newspaper accelerated that decision by four years.

On the other hand, the express language of instruction sixteen would bar any damages if *"the same decision . . .* to terminate [Molina's] employment even in the absence of [his] protected speech" refers to the actual date of termination, October 19, 1999. Jury note four suggests the instruction on damages was not clear. The district court did not expressly instruct the jury to skip question six. The jury may have concluded that instruction twenty-four required it to compute Molina's financial loss up to trial regardless of whether the defendants established a complete affirmative defense. Alternatively, the jury may have concluded that the defendants would have terminated Molina's employment sometime between October 1999 and the November 2003 trial (e.g., January 2000) for reasons unrelated to Molina's First Amendment rights, but the jury may have understood instruction twenty-four to preclude awarding less than four years in damages.

Our review of the record convinces us that the ambiguity in question two prevents us from resolving the jury's answers in favor of either Molina or the defendants. Because it is not possible to harmonize the jury's answers "under a fair reading of them," we must grant a new trial. *See Gallick,* 372 U.S. at 119–20, 83 S.Ct. 659; *Tanno,* 830 F.2d at 992.[2]

---

2. We note that a new trial may have been avoided if the district court had attempted to clarify the inconsistency before dismissing the jury. Resubmission of an inconsistent verdict

## III. CONCLUSION

For these reasons, we REVERSE AND REMAND for a new trial on Molina's First Amendment claim.

is "the most sensible course where the jury is still available." *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1056–57 (9th Cir.2003). Allowing the jury to correct its own mistakes conserves judicial resources and the time and convenience of citizen jurors, as well as those of the parties. It also allows for a resolution of the case according to the intent of the original fact-finder, while that body is still present and able to resolve the matter. *Id.* at 1058. While the parties could not agree on a supplemental jury instruction or inquiry, this was not a good reason for dismissing the jury without the judge attempting to clarify the inconsistency among the answers.