320 F.3d 1052
 Fernando DUK, Plaintiff-Appellant/Cross-Appellee,
v.
MGM GRAND HOTEL, INC., a Nevada Corporation, dba MGM Grand Hotel, Casino and Theme Park, Defendant-Third-Party-Plaintiff-Appellee/Cross-Appellant,
v.
American Medical Response; Clark County Detention Center; Las Vegas Metropolitan Police Department, Third-Party-Defendants/Cross-Appellees.
 No. 01-15841.
 No. 01-16034.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted October 10, 2002.
 Filed March 3, 2003.
 As Amended on Denial of Rehearing April 17, 2003.
 
 COPYRIGHT MATERIAL OMITTED Rob Martin, Noah Allison, Martin & Allison, Ltd., Las Vegas, NV, Shaun P. Martin, University of San Diego School of Law, San Diego, CA, for plaintiff-appellant/cross-appellee, Duk.
 Bruno Wolfenzon, The Wolfenzon Law Group, Las Vegas, NV, for defendant-appellee/cross-appellant, MGM Grand.
 LeAnn Sanders, Alverson, Taylor, Mortensen, Nelson & Sanders, Las Vegas, NV, for third-party defendant/appellee, American Medical Response.
 Michael A. Federico and Peter Angulor, Las Vegas, NV, for third-party defendants/appellees, Las Vegas Metropolitan Police Department and Clark County Detention Center.
 Appeal from the United States District Court for the District of Nevada; Howard D. McKibben, District Judge, Presiding. D.C. No. CV-95-00020-HDM.
 Before D.W. NELSON, HAWKINS, and WARDLAW, Circuit Judges.
 OPINION
 MICHAEL DALY HAWKINS, Circuit Judge.
 
 
 1
 Fernando Duk ("Duk") appeals the judgment arising from a defense verdict in favor of MGM Grand Hotel, Inc. ("MGM") in Duk's personal injury action in which there were two trials and three verdicts. MGM cross-appeals the district court's decision to resubmit the first verdict to the jury for clarification. Because we find that the court was within its discretion in resubmitting the first verdict, but erred in ordering a new trial upon receipt of the second verdict, we reverse and remand with instructions to enter judgment in Duk's favor consistent with the first jury's second verdict.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 The dispute in this case arises out of Duk's night of drinking and gambling at the MGM Grand Hotel in Las Vegas. Duk and his wife were staying at the hotel as a stopover on their way home from a promotional trip for their lighting business. Duk is an alcoholic, and he was drinking heavily while gambling at MGM's casino with his wife. After being provided a free meal at one of MGM's restaurants, a quite drunk Duk became disruptive. Duk's wife eventually left the restaurant, but he remained behind and continued his disruptive behavior, banging on the wooden dividers between booths and blowing kisses at the restaurant's female patrons.
 
 
 3
 In response to diner complaints, MGM Security Shift Manager Mike Reece and Security Officer Tom Dixon went to the restaurant and requested that Duk leave. When Duk refused, Reece made a citizen's arrest and took Duk into custody. Duk was brought to a detention room at MGM to await officers from the Las Vegas Metropolitan Police Department ("Metro") who would transport him to jail. While Duk was in the detention room, his wife called security to check on him, and advised security that Duk was an insulin-dependent diabetic.
 
 
 4
 Duk arrived at MGM's detention area at approximately 10:20 p.m. After being in the detention room for about twenty minutes, Duk began to complain of lung pain. MGM security called for Mercy Ambulance (now known as American Medical Response ("AMR")) to examine Duk. Duk presented evidence at trial that he also complained of chest pain, and alleges that MGM security officers failed to relate this complaint to arriving AMR paramedics. The paramedics, aware of complaints of lung pain, examined Duk and determined that, while he was intoxicated, Duk had no other medical problems. The paramedics checked Duk's blood sugar and listened to his lungs, but did not evaluate his heart rate or blood pressure.
 
 
 5
 Police officers arrived at approximately 11:00 p.m., and a transport vehicle arrived around two hours later to take Duk to the Clark County Detention Center ("CCDC"). After being released from jail at around 10:00 a.m. the next morning, Duk went to a local hospital, where it was determined that he had suffered a heart attack. As a result of this heart attack, Duk sustained massive damage to the left ventricle of his heart, and ultimately required a heart transplant in April 1995. Duk filed suit against MGM, claiming damages for medical expenses, pain and suffering, and economic damages suffered because of his inability to work following the transplant. The first jury trial was held in 1998. Because Nevada's comparative negligence scheme awards damages only to those plaintiffs who are found to be 50% negligent or less, the jury was presented with a special verdict form in which it was asked to determine the relative negligence of each party. Nev.Rev.Stat. § 41.141. Question 5 of the verdict form asked the jury to allot a percentage of the total negligence to the plaintiff and to the defendant. Following question 5, the jury was instructed that if it found the plaintiff to be more than 50% negligent, it should "sign and return [the ] verdict" and judgment would be entered for the defendant. However, if in question 5 the jury found the plaintiff's negligence to be 50% or less, it was instructed to answer question 6, which asked for a determination of damages. Despite these instructions, the verdict form returned by the jury ("the first verdict") attributed 65% of the negligence to Duk and 35% to MGM, but still went on to award Duk $3.3 million in damages.
 
 
 6
 The district court reviewed the first verdict and, before announcing it, resubmitted the verdict form to the jury, informing the jury that the verdict contained an inconsistency and asking it to "continue [its] deliberations." Following 20 minutes of deliberation, the jury returned with a new verdict ("the second verdict"), apportioning 51% of the fault to MGM and 49% to Duk, but leaving the award of damages the same. The court granted MGM's subsequent motion for a new trial based on the inconsistency between the two verdicts.
 
 
 7
 In the period between the mistrial grant and the new trial, MGM was permitted to add third-party defendants AMR, Metro, and CCDC. Subsequently, Duk reached settlements with AMR ($50,000) and with Metro and CCDC (combined total of $10,000). The trial court found these settlements to be in good faith.
 
 
 8
 At the second trial, the jury returned a verdict for MGM. Duk appeals the new trial grant and the judgment based upon the MGM verdict in the second trial, claiming that the second verdict was legitimate.[1] MGM cross-appeals, claiming that the trial court should not have resubmitted the original inconsistent verdict, but should have discarded the damages award and entered judgment for MGM. In the alternative, MGM argues that a new trial was properly ordered. MGM also claims that the settlement between Duk and the third-party defendants was not made in good faith, and challenges the jury's original award as containing improper "business damages."
 
 ANALYSIS
 I. Resubmission
 
 9
 The practice of resubmitting an inconsistent verdict to the jury for clarification is well-accepted. Federal Rule of Civil Procedure 49(b) provides that general verdict sheets may be "return[ed] to the jury for further consideration of its answers and verdict" when the answers to interrogatories are inconsistent with each other or with the general verdict. Fed.R.Civ.P. 49(b). Although Rule 49(a), dealing with special verdicts such as this one, does not explicitly provide for resubmission in case of an inconsistency, we have held that, because the rule does not prohibit it, special verdicts are also subject to the practice. Mateyko v. Felix, 924 F.2d 824, 827 (9th Cir.1990).
 
 
 10
 Mateyko's embrace of the practice is based on the notion that resubmission "promotes both fairness and efficiency." Id. That principle was reaffirmed in Larson v. Neimi, 9 F.3d 1397 (9th Cir.1993), when we held that the resubmission of an inconsistent special verdict to a jury, with a request for clarification, was within the district court's discretion. Id. at 1402. Larson had brought a 42 U.S.C. § 1983 damage action arising out of his allegedly wrongful arrest. The jury returned a special verdict form in which it found that the arresting officer had qualified immunity, but nonetheless proceeded to award damages to Larson. Id. at 1398. The trial judge, with approval from the parties, resubmitted the verdict to the jury, and the jury changed the verdict to say the officer did not have qualified immunity. Id. We approved the district court's actions, and held that "[w]here the district judge does not push the jury in one direction or another, resubmission is a most sensible solution." Id. at 1401. As in Mateyko, we endorsed the policy underlying the practice of resubmission, noting that "when the very body that issued the ambiguous or inconsistent verdict is still available to clarify its meaning, a request that it do so comports with common sense as well as efficiency and fairness." Id. at 1402.
 
 
 11
 Here, the inconsistency arose when the jury awarded damages to Duk, even though it found him more than 50% responsible for his own injuries. MGM argues that the jury contravened the verdict form's instructions to "sign and return [the] verdict" if Duk were found to be more than 50% negligent and, as a result, resubmission was barred by Floyd v. Laws, 929 F.2d 1390, 1397 (9th Cir.1991) (responses in special verdict given in violation of a "stop here" instruction should be disregarded).
 
 
 12
 Floyd involved a 42 U.S.C. § 1983 suit and pendent state tort claims brought by a mother and her children against a municipality and its police chief. Id. at 1392. The jury was given a special verdict form addressing each of the claims, and found the police chief liable for assault and false imprisonment. Id. However, after the jury had been discharged, the defendant's counsel pointed out that the jury's answers to two of the questions were apparently inconsistent with one another. The jury answered "no" to question 13, which asked whether the plaintiffs were damaged as a result of the chief's actions. Following question 13 was an instruction which read: "If your answer to question 13 is `No,' do not answer any further questions, but proceed to the end of this form and sign the verdict. If you answered `Yes' to question 13, proceed to question 14." Id. at 1392-93. Question 14 asked the jury to award damages, which it did, awarding the plaintiffs $7,500. Id. at 1393. The trial court declared the answer to question 14 to be surplusage and entered judgment for the defendants. Id.
 
 
 13
 We upheld the trial court's decision, holding that, "as in the case of parenthetical comments, special findings issued in violation of the trial court's express instructions do not constitute legitimate or viable findings of fact." Id. at 1397. Because the trial court was "bound by law to disregard any answer to question 14 as surplusage," the damages award "never became a part of the special verdict, and the trial court was faced with no apparent inconsistency." Id. at 1399-1400.
 
 
 14
 Floyd, however, does not address the situation where the jury is still available when the inconsistency is recognized. Id. at 1392. In fact, we stated in Floyd that although resubmission was unavailable in that case, it is generally available under Rule 49(a) and is not precluded by Supreme Court authority requiring reconciliation of apparently inconsistent verdicts.[2] Id. at 1396-97. Because the jury had already been dismissed, the trial court in Floyd was left with the option of either disregarding the jury's answers following the "stop here" instruction or ordering a new trial. Thus, we had no occasion to consider whether resubmission, if it were possible, would also be within a trial court's discretion.
 
 
 15
 Here, unlike in Larson, the verdict form did contain a "stop here" instruction.[3] Therefore we now squarely face the applicability of Floyd's "surplusage" rule where the jury is still available. We now hold that where the jury is still available, a district court's decision to resubmit an inconsistent verdict for clarification is within its discretion.
 
 
 16
 Other circuits recognize resubmission as the most sensible course where the jury is still available. In Richard v. Firestone Tire & Rubber Co., 853 F.2d 1258 (5th Cir.1988), the Fifth Circuit held that resubmission of an inconsistent special verdict to the jury was within the district court's discretion, even where a "stop here" instruction was present. Id. at 1260-61. In Richard, the jury ignored express instructions on the jury form when it continued to answer questions even though the form instructed the jury to "go no further" if it answered "no" to the preceding question. Id. at 1259-60. The court noted that it had previously approved a district judge's decision to dismiss answers as surplusage in White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir. 1987), but held that, because a district court has "wide discretion in deciding whether the jury's answers to the court's questions are clear," the trial court's decision to resubmit the verdict to the jury for clarification was also proper. Richard, 853 F.2d at 1260.
 
 
 17
 In Riley v. K Mart Corp., 864 F.2d 1049 (3d Cir.1988), the Third Circuit was confronted with an inconsistency very similar to the case at bar, when the jury found the plaintiff 70% at fault, but went on to award damages.[4] Id. at 1051. The district court resubmitted the verdict for clarification, and the Third Circuit found that to be within the court's discretion. Id. at 1052. While the verdict form in Riley did not contain a "stop here" instruction, the Third Circuit determined that "the district court could have permissibly entered judgment in accordance with the first set of answers." Id. However, the court held that this was not "the only option consistent with the [s]eventh [a]mendment," and that the district court's action was a proper attempt "to find clarity and consistency in the jury's answers." Id.
 
 
 18
 To the contrary is the Fourth Circuit, which has determined resubmission to be an abuse of discretion, holding in McCollum v. Stahl, 579 F.2d 869 (4th Cir.1978), that "the remand of the questions to the jury was tantamount, in its effect, to a direction to the jury to find liability in order to warrant the award of damages." Id. at 871. The court so held even though the jury in McCollum was not given a "stop here" instruction, and the district court observed that this could have been the cause of the inconsistency. Id. at 870-71.
 
 
 19
 We think the better view allows for resubmission. The Ninth Circuit has endorsed resubmission of special verdicts,[5] and, when the jury is still available, resubmitting an inconsistent verdict best comports with the fair and efficient administration of justice. Allowing the jury to correct its own mistakes conserves judicial resources and the time and convenience of citizen jurors, as well as those of the parties. It also allows for a resolution of the case according to the intent of the original fact-finder, while that body is still present and able to resolve the matter. An entirely different situation is present where the jury has been dismissed. There, dismissal of surplusage under the Floyd rule makes sense. It is certainly preferable to ordering a new trial, and is very probably the best available instrument to determine the jury's intent.
 
 
 20
 Resubmission, of course, leaves open the possibility that the jury will reach an improper "compromise" verdict. See, e.g., Riley, 864 F.2d at 1054. However, we presume that citizen jurors will properly perform the duties entrusted them and will not construe resubmission as an invitation to subvert the law and contort findings of fact in favor of a desired result.
 
 II. The New Trial Order
 
 21
 A trial court is rarely entitled to disregard jury verdicts that are supported by substantial evidence. The Supreme Court has held that a trial court has a duty to attempt to harmonize seemingly inconsistent answers to special verdict interrogatories, "if it is possible under a fair reading of them." Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). A court may not disregard a jury's verdict and order a new trial until it "attempt[s] to reconcile the jury's findings, by exegesis if necessary." Id. "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 364, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962). To do otherwise "results in a collision with the Seventh Amendment." Id.; see also Magnussen v. YAK, Inc., 73 F.3d 245, 246-47 (9th Cir.1996).
 
 
 22
 While it is clear that a district court has a duty to attempt to harmonize interrogatories within the same verdict, there is little authority addressing the question whether harmonization is required across different verdicts, where a verdict has been resubmitted for clarification. Indeed, resubmission necessarily means that there might well be a difference between the first verdict and that reached after resubmission. Such an "inconsistency" will usually be considered a proper correction of a mistake in the original verdict. However, even if the second verdict appears to the trial court to be an improper compromise, the Seventh Amendment requires the court to seek a legitimate explanation for a verdict that is not contrary to the weight of the evidence.[6] Further, verdicts rendered pursuant to resubmission are readily amenable to the harmonization requirement. In this case, the second verdict is flatly inconsistent with the first because it apportions liability differently. However, this discrepancy is easily explained by the process of redeliberation.
 
 
 23
 The verdict in this case was a special verdict, as provided for under Rule 49(a). As discussed, we have held that, although Rule 49(a) does not explicitly provide for the resubmission of inconsistent special verdicts, neither does it prohibit it. Mateyko, 924 F.2d at 827. Several other circuits are in accord with this view. See Karl v. Burlington N. R.R. Co., 880 F.2d 68, 72-73 (8th Cir.1989); Santiago-Negron v. Castro-Davila, 865 F.2d 431, 444 (1st Cir.1989); Auwood v. Harry Brandt Booking Office, Inc., 850 F.2d 884, 890-91 (2d Cir.1988); Nance v. Gulf Oil Corp., 817 F.2d 1176, 1178 (5th Cir.1987).
 
 
 24
 Resubmission of an inconsistent verdict is done with the sole purpose of allowing a jury to reconcile inconsistencies. This process is not simply restricted to correcting transcription errors, but also envisions a process of redeliberation. In Larson, we approved of resubmission "to clarify [the] meaning" of the verdict, where the jury originally found the defendant entitled to qualified immunity, and then, after resubmission, found he was not entitled to such immunity. Larson, 9 F.3d at 1402. Such a result is possible only where the jury is allowed to resume its deliberations. Some inconsistencies may only be resolved if the jury reconsiders its answers in light of the instructions given to determine how its legally inconsistent answers can be properly reconciled according to its view of the facts.
 
 
 25
 Once this premise is accepted, it becomes clear that a post-resubmission verdict can easily be harmonized with its earlier counterpart by reference to a wholly proper process of redeliberation. In this case, the second verdict was not internally inconsistent. The only reason the district court expressed in finding that a new trial was required was that the second verdict was the product of a "manipulation of negligence percentages." The court did not consider the possibility that the jury came to a different conclusion as to the facts because it engaged in further deliberations and legitimately came to new findings of fact. This is precisely what the trial court instructed the jury to do. When the court resubmitted the verdict to the jury, it twice instructed the jurors to "continue [their] deliberations."
 
 
 26
 In deeming the jury's second verdict an improper manipulation, the district court pointed to Riley, in which the Third Circuit held that a new trial was necessary because of the obviously result-oriented nature of the deliberations that took place upon resubmission. In Riley, the jury ignored a "stop here" instruction and awarded $250,000 in damages even though it had found the plaintiff 70% at fault. 864 F.2d at 1051. Upon resubmission of the verdict, the jury lowered its assessment of the plaintiff's negligence from 70% to 49.9%, and lowered the total damages to $150,000. Id. at 1052. Because both verdicts resulted in an award of approximately $75,000 in damages, the court held that the jury had "disregarded the duties assigned to it" and was intent only on reaching a "pre-determined destination." Id. at 1054.
 
 
 27
 An illegal compromise was "obvious" in Riley because the change in both liability and damages was a strong indication that the jury had abdicated its fact-finding duty and its findings were "but a means to a result." Id. at 1054. Thus, the court found "no rational reason" to accept the second verdict over the first. Id. at 1055. Here, however, the amount of damages remained unchanged from the first verdict to the second. Therefore, it is still quite plausible that the jury changed the apportionment of liability because it redeliberated and either changed its mind or clarified its thinking. It cannot be said here that the jury was clearly seeking a predetermined result. See Veranda Beach Club Ltd. P'ship v. W. Sur. Co., 936 F.2d 1364, 1383 (1st Cir.1991) (upholding a verdict following resubmission because it "lack[ed] the trappings of transparent contrivance that festooned the Riley case"). As we have stated, the trial court has a duty to reconcile the verdicts "on any reasonable theory consistent with the evidence." Pierce v. S. Pac. Transp. Co., 823 F.2d 1366, 1370 (9th Cir.1987) (emphasis added). Because it is possible to explain the inconsistency in a way that comports with the law, the district court's decision to disregard the second verdict and order a new trial was an abuse of discretion.
 
 III. Business Damages
 
 28
 MGM cross-appeals the jury's calculation of damages as containing an improper award of business damages to Duk. "We will disturb a damage award only when it is clear that the evidence does not support it." City of Phoenix v. Com/Sys., Inc., 706 F.2d 1033, 1039 (9th Cir. 1983). The issue of Duk's lost earnings was properly before the jury and evidence was heard on both sides. There is no suggestion that the jury was not properly instructed with respect to damages. Therefore, we find no error with respect to the damages awarded in this case.
 
 IV. Settlements with Third-Party Defendants
 
 29
 MGM also challenges Duk's settlement with third-party defendants AMR, Metro, and CCDC. Because a determination that the settlement was made in good faith releases the settling parties from further contribution to the non-settling party under Nevada law, Nev.Rev.Stat. § 17.245(1)(b), the approving court must use its discretion to consider the fairness and overall appropriateness of the proposed settlement. See Velsicol Chem. Corp. v. Davidson, 107 Nev. 356, 811 P.2d 561, 563 (Nev.1991) (per curiam). We find no abuse of discretion with respect to the district court's good faith determination.
 
 CONCLUSION
 
 30
 The trial court did not abuse its discretion in ordering resubmission of the first verdict. Because the second verdict was reconcilable with the first, the Seventh Amendment dictates that the second verdict was valid, and the court abused its discretion when it ordered a new trial. We order reinstatement of the second verdict and entry of judgment for the plaintiff, including such interest thereon as calculated by the district court.
 
 
 31
 AFFIRMED IN PART; REVERSED IN PART. Each party to bear its own costs on appeal.
 
 
 
 Notes:
 
 
 [1]
 Duk makes several assignments of error as to the second trial. Because we hold that it was improper for the district court to order the second trial, discussion of these claims is unnecessary
 
 
 [2]
 Gallick v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), recognized that a court has a duty under the Seventh Amendment to reconcile seemingly inconsistent answers in a special verdict, "if it is possible under a fair reading of them." See infra.
 
 
 [3]
 The verdict sheet inLarson had a "stop here, if your answer is no" instruction after the question whether the officer had violated Larson's rights (which the jury answered in the affirmative), but did not include a "stop here, if your answer is yes" instruction after the next question, which asked whether he was entitled to qualified immunity. Larson, 9 F.3d at 1401.
 
 
 [4]
 As in Nevada, Pennsylvania's comparative negligence regime provides that a plaintiff can recover only if his or her negligence is less than or equal to 50%. 42 Pa. Cons.Stat. Ann. § 7102(a)
 
 
 [5]
 In addition to disapproving of resubmission,McCollum, 579 F.2d at 871, also held that resubmission is not available under Rule 49(a), giving the rule pronounced therein little persuasive value under the law of this Circuit.
 
 
 [6]
 Even the Third Circuit's decision inRiley, which rejected the jury's verdict on resubmission, implied that the district court had a duty to reconcile a resubmitted verdict in holding that there could be "no principled reconciliation of [the] blatant inconsistencies" between the two verdicts. Riley, 864 F.2d at 1054.