**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

QUIKSILVER, INC., a Delaware
corporation,

               Plaintiff-Appellee,

  v.

KYMSTA CORP., a California
corporation,

               Defendant-Appellant.

No. 08-55861

D.C. No. 2:02-cv-05497-VBF-RC

MEMORANDUM *

Appeal from the United States District Court
for the Central District of California
Valerie Baker Fairbank, District Judge, Presiding

Argued and Submitted December 8, 2009
Pasadena, California

Before: THOMPSON and SILVERMAN, Circuit Judges, and BOLTON, **
District Judge.

    Defendant-appellant Kymsta Corp., a clothing manufacturer and wholesaler,

appeals the issuance of a permanent injunction requiring the complete phase-out of

---

    \*     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

    \*\*     The Honorable Susan R. Bolton, United States District Judge for the
District of Arizona, sitting by designation.

its use of the name "Roxywear." As the facts and procedural history are familiar to the parties and described by the courts, *see, e.g.*, *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 751-55 (9th Cir. 2006), we do not recite them here except as necessary to explain our decision. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM, but modify the scope of the injunction.

## I. Resubmission With Supplemental Instructions

Kymsta argues the district court erred in resubmitting an initial special verdict with supplemental instructions. We review such a decision for abuse of discretion. *Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1056-57, 1058 (9th Cir. 2003) (explaining, "resubmitting an inconsistent verdict best comports with the fair and efficient administration of justice").

In this case, the district court properly resubmitted the verdict due to a potential inconsistency in the jury's responses—the jury found a likelihood of confusion for trademark infringement, but not for false designation of origin, despite a marked similarity between the questions. As Quiksilver argues, the inconsistency may have been due to jury confusion as to the meaning of "ordinary purchasers." Accordingly, the district court acted within its discretion in clarifying "ordinary purchasers" on resubmission. *See Bonner v. Guccione*, 178 F.3d 581, 587-88 (2d Cir. 1999) (holding that resubmission to a jury with corrected

2

instructions is proper because the trial judge is intimately aware of possible sources of jury confusion).

In addition, the district court properly determined that past harm was irrelevant to the claims. *See, e.g.*, Ninth Circuit Model Civil Jury Instructions 15.5 (2008) (excluding harm as an element of 15 U.S.C. § 1114(1) trademark infringement and § 1125(a)(1) false designation of origin claims). The district court, thus, acted within its discretion in instructing the jury to ignore the harm questions on redeliberation.

## II. Innocent Use Defense

Kymsta also argues the district court erred in holding that the § 1115(b)(5) statutory innocent use defense was inapplicable to the § 1125(a)(1) false designation of origin claim. We conclude that the district court did not err in this regard. In *Quiksilver, Inc.*, 466 F.3d at 761, we held that the statutory innocent use defense is distinguishable from the common law innocent use defense in that it does not require a showing of "remoteness." In distinguishing these defenses, we implicitly concluded that the common law innocent use defense remained a viable defense where a claimant asserts common law trademark rights. *See also* 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 26:4 (2009) (The *common law* innocent use defense "is followed when [§ 1125(a)] is used as the

vehicle to assert common law rights in federal court."). To claim false designation of origin, Quiksilver did not rely on proof of federal trademark registration, but instead showed that its marks were inherently distinctive or acquired secondary meaning before Kymsta used the ROXYWEAR names. Thus, Quiksilver, via the false designation of origin claim, asserted its common law rights. To defeat such rights, Kymsta would have had to establish the common law innocent use defense, which it did not do.

## III. Laches

In the first district court proceeding, Kymsta prevailed on its laches defense. *See Quiksilver, Inc. v. Kymsta Corp.*, No. 02-5497, at 3 ¶ 5 (C.D. Cal. Feb. 23, 2004). Quiksilver did not appeal that judgment. On remand, over Kymsta's objection, the district court departed from the law of the case and reversed the prior laches ruling. We review both determinations for abuse of discretion. *In re Beaty*, 306 F.3d 914, 921 (9th Cir. 2002) (addressing laches); *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (addressing law of the case).

The district court acted within its discretion in departing from the law of the case due to substantially different evidence presented at retrial. For example, evidence presented at retrial showed that, after the first trial, Kymsta began to use ROXYWEAR in connection with contemporary sportswear, targeting higher-end

4

and slightly older females than the previous juniors' line. Evidence also showed that Kymsta owns other contemporary lines, which Kymsta's executives described as "interchangeable." As the district court noted, this evidence is relevant to the extent of harm suffered by Kymsta because of Quiksilver's delay in bringing suit. Kymsta asserts that this evidence was presented at the first trial; however, in the second trial, Kymsta's officers admitted to the transition of the ROXYWEAR line and the interchangeability of the lines, evidence which was unavailable initially.

The district court also acted within its discretion in reversing the laches ruling on the merits. Quiksilver's delay beyond the period of the state statute of limitations raised a presumption of laches. The district court then weighed the *E-Systems* factors in concluding that Quiksilver overcame the presumption. The district court did not abuse its discretion in making these determinations.

## IV. Permanent Injunction

Kymsta objects to the grant of a permanent injunction and challenges the district court's application of the four factors from *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Kymsta also objects to the scope of the injunction. "We review a district court's grant or denial of an injunction, as well as the scope of the injunction, for abuse of discretion." *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009).

**1. Grant of Permanent Injunction**

Kymsta primarily objects to the district court's finding that Quiksilver is likely to suffer irreparable injury if the injunction is denied. *See Winter v. NRDC*, 129 S. Ct. 365, 375 (2008) (requiring plaintiffs seeking preliminary injunctive relief to show "that irreparable injury is *likely* in the absence of an injunction").

In finding irreparable injury, the district court cited *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989), for the proposition that, "[O]nce the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." As Kymsta argues, this presumption may have been called into question by *eBay*. However, the district court did not rely on this presumption. The district court identified likelihood of future harm due to: Kymsta's inability to control retailers' use of the ROXYWEAR mark; conflicting internet marketing; and Kymsta's intent to change its price-point or distribution, potentially damaging Quiksilver's brand. Thus, the district court independently and adequately assessed irreparable injury.

Kymsta's other objections to the district court's grant of an injunction do not change this result.

**2. Scope of the Permanent Injunction**

6

Kymsta argues that the injunction is not narrowly tailored, as required. Although the district court has "considerable discretion in fashioning the terms of an injunction," an injunction must be "tailored to eliminate only the specific harm alleged." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992). We conclude that the injunction appealed is overbroad.

Trademark law authorizes courts to apply "principles of equity" in granting injunctions "upon such terms as the court may deem reasonable . . . to prevent a violation under [§ 1125(a)]." 15 U.S.C. § 1116(a). In determining the appropriateness and scope of injunctive relief, several factors may be relevant. *See generally* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 35(2) (1995) (listing, for example, the "nature and extent of the wrongful conduct," "any unreasonable delay by the plaintiff in bringing suit," and "the relative harm likely to result" to the parties' interests). We have also explained that "likelihood of confusion to consumers is the critical factor in our consideration of . . . the breadth of the injunction." *Internet Specialties W.*, 559 F.3d at 993 n.5.

Here, the district court acknowledged that a "close[] question is raised whether a more limited injunction, such as the one the court is ordering during the phase-out period, would be the proper remedy." Indeed, in 2004, the district court

7

granted a similar limited injunction.[1] Quiksilver did not challenge the scope of that injunction, but instead argued to this court that the limited injunction was sufficient "to avoid confusion in the marketplace between ROXY and ROXYWEAR," by "only bar[ring] Kymsta from new and different uses of the mark." Appellee Quiksilver, Inc.'s Answering Brief 56, *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749 (9th Cir. 2006) (capitalization altered), 2004 WL 2294261.

Considering Kymsta's innocent adoption of the ROXYWEAR marks, Quiksilver's delay in bringing suit, the parties' long period of coexistence in the market, and Quiksilver's own admission that the limited injunction is sufficient to avoid confusion in the marketplace, we hold that the instant injunction should be equally limited.[2] *See, e.g.*, *E. & J. Gallo Winery*, 967 F.2d at 1297-98 (modifying the district court's injunction due to overbreadth). In particular, we make two

---

[1] The only marked difference between the 2004 injunction and the 2008 phase-out period injunction is that the 2004 injunction additionally barred the use of ROXYWEAR marks on "a knock-off of any ROXY clothing product." In the first appeal, we vacated the 2004 injunction, but also noted that the " 'knock-offs' prohibition" impermissibly went "beyond the claims asserted in the complaint and the evidence presented at trial." *Quiksilver, Inc.*, 466 F.3d at 754 n.4. Thus, the district court properly addressed this concern in drafting the 2008 injunction.

[2] We also note that the ROXYWEAR names allude to Roxanne Heptner, president and part-owner of Kymsta, and we are "reluctant to preclude an individual's business use of his own name when no attempt to confuse the public has been made." *Friend v. H.A. Friend & Co.*, 416 F.2d 526, 531 (9th Cir. 1969).

8

alterations to the injunction described on pages 7 through 9 of the district court's judgment. *See Quiksilver, Inc. v. Kymsta Corp.*, No. 02-5497, at 6-9 (C.D. Cal. Apr. 15, 2008) (judgment).  First, we strike the following language from the injunction described in paragraph 6 of pages 7 and 8:

> 6.　　Kymsta and its directors, officers, employees and agents are hereby permanently enjoined and restrained, pursuant to 15 U.S.C. § 1116(a), from:
> (a)　Using, or permitting the use of, the "Roxywear by Roxanne Heptner", "Roxywear by Roxx" or "Roxywear" marks, or any other mark confusingly similar to Quiksilver's QUIKSILVER ROXY and ROXY trademarks, to market, sell, advertise and/or identify any clothing products;
> (b)　Falsely designating the origin of any clothing products by using, or permitting the use of, the "Roxywear by Roxanne Heptner", "Roxywear by Roxx" or "Roxywear" marks, or any other mark confusingly similar to Quiksilver's QUIKSILVER ROXY and ROXY trademarks.
> (c)　Provided, however, that Kymsta shall be permitted, for a period of 18 months from the date of this Judgment, to continue to use the "Roxywear by Roxanne Heptner" and "Roxywear by Roxx" marks to market, sell and identify contemporary sportswear products, while it phases out all use of said marks;

Second, we permanently impose the language of the limited injunction described in paragraph 7 of pages 8 and 9, and paragraph 8 of page 9, to provide:

> 7.　　Kymsta and its directors, officers, employees and agents are hereby permanently enjoined and restrained from using, or permitting the use of, the "Roxywear by Roxanne Heptner" and "Roxywear by Roxx" marks to market, sell or identify any clothing products other than in the wholesale market for the sale of young women's clothing to retail account buyers.  Specifically, to designate the source and origin of the products and to avoid confusion in the marketplace, *inter alia*:

9

(a) The term "Roxywear" must be displayed, presented, shown or otherwise used as one word, with all letters in the same font, same type-size, same color and same format;

(b) One of the following identifiers must be conspicuously displayed whenever the term "Roxywear" is displayed, presented, shown or otherwise used: "by Roxanne Heptner," "by Roxx," or "by Kymsta";

(c) The "Roxywear by Roxanne Heptner" and "Roxywear by Roxx" marks shall only be displayed, presented, shown or used on the interior labels affixed to the inside of any article of clothing, and specifically shall not be displayed, presented, shown or used on the outside of any article of clothing, such as imprinting on or incorporating in the design of the fabric the "Roxywear by Roxanne Heptner" or "Roxywear by Roxx" marks as a logo or brand or using the "Roxywear by Roxanne Heptner" or "Roxywear by Roxx" marks on any badging, tags or labels affixed to the outside of any article of clothing;

(d) Clothing bearing the "Roxywear by Roxanne Heptner" or "Roxywear by Roxx" marks shall only be sold through Kymsta's current channels of distribution;

(e) Clothing bearing the "Roxywear by Roxanne Heptner" or "Roxywear by Roxx" marks shall not be advertised or promoted to consumers, except through co-op advertisements placed directly by retailers;

8. Further, Kymsta and its directors, officers, employees and agents are hereby permanently enjoined and restrained from selling or licensing or assigning to any third party any rights in or to the "Roxywear by Roxanne Heptner", "Roxywear by Roxx" or "Roxywear" marks.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's resubmission of the first jury verdict and its judgments of false designation of origin and laches.

The district court's grant of an injunction is also AFFIRMED, but that injunction is modified as described in Part IV.2. of this memorandum.