**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LATONIA W. LISTER,

*Plaintiff - Appellant*,

v.

CITY OF LAS VEGAS,

*Defendant - Appellee*.

No. 24-3933

D.C. No.
2:21-cv-00589-
CDS-MDC

OPINION

Appeal from the United States District Court
for the District of Nevada
Cristina D. Silva, District Judge, Presiding

Argued and Submitted May 12, 2025
San Francisco, California

Filed August 4, 2025

Before: Carlos T. Bea and Ana de Alba, Circuit Judges, and
Jeffrey Vincent Brown, District Judge.[*]

Opinion by Judge Brown

---

[*] The Honorable Jeffrey Vincent Brown, United States District Judge for
the Southern District of Texas, sitting by designation.

## SUMMARY[**]

### Employment Discrimination

The panel affirmed the district court's entry of judgment for the City of Las Vegas in Latonia Lister's lawsuit for employment discrimination, and affirmed the district court's denial of Lister's motion for new trial, after a jury found the City did not violate Title VII but nevertheless awarded Lister damages.

The jury found: (1) an incident was severe or pervasive and objectively and subjectively offensive to a reasonable person; but that (2) the incident was not motivated by race or gender; (3) the City did not discriminate against Lister in violation of Title VII; and (4) the City did not retaliate against Lister for reporting the April 7 incident in violation of Title VII. Despite finding no liability, the jury answered a damages question, awarding Lister $150,000. The district court concluded that it could reconcile the verdict without resubmitting it to the jury, and set aside the damages award.

The panel reviewed for plain error two jury instructions that Lister argued contained prejudicial errors. The panel held that when Jury Instruction 12 is read as a whole, the exclusion of race and sex from the first element does not amount to an error—let alone a prejudicial one—as the instruction's opening paragraph refers to the protected characteristics of race and sex, clearly instructing the jury to assess the elements of a hostile work environment on these grounds. The panel held that, setting aside the lack of

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

prejudice, there is no conflict between Jury Instruction 12, which directed the jury to assess whether Lister experienced a hostile work environment on the grounds of race and gender, and Jury Instruction 9, which set forth the standard of proof for a gender- or race-based hostile-work-environment claim.

The panel held that the district court did not abuse its discretion when it did not resubmit the verdict to the still available jury. The panel noted this court's precedent holding that, where the jury is still available, a district court's decision to resubmit an inconsistent verdict for clarification is within its discretion. Facing the opposite question here, the panel held that a district court has discretion *not* to resubmit an inconsistent verdict for clarification when the jury is still available. Here, the district court's decision to poll the jury—with both parties' consent—clarified the seemingly inconsistent liability findings. By confirming the relevant findings of fact, the district court confirmed a clear statement of no liability from the jury. At that point, the district court had sufficient legal grounds to discharge the jury and reconcile the verdict on its own. Given the jury's finding that there was no race- or sex-based discrimination or retaliation, the jury's answer to the damages question is best treated as surplusage.

The panel held that because the district court correctly concluded that the verdict could be reconciled, the district court did not abuse its discretion in denying Lister's motion for a new trial.

**COUNSEL**

Jamon R. Hicks (argued) and Noel A. Arreola, Douglas Hicks Law, Los Angeles, California; F. Travis Buchanan, F. Travis Buchanan & Associates PLLC, Las Vegas, Nevada; for Plaintiff-Appellant.

Nechole M. Garcia (argued), Chief Deputy City Attorney; Timothy J. Geswein, Deputy City Attorney; Jeffry M. Dorocak, City Attorney; Las Vegas Office of the City Attorney, Las Vegas, Nevada; for Defendant-Appellant.

**OPINION**

BROWN, District Judge:

Plaintiff-Appellant Latonia Lister sued Defendant-Appellee City of Las Vegas for employment discrimination. A jury found the City did not violate Title VII but nevertheless awarded Lister $150,000 in damages. Lister appeals the district court's entry of judgment for the City and denial of her motion for a new trial. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

**I.**

Las Vegas's first African-American female firefighter, Lister worked as a City firefighter for about 29 and a half years. On April 7, 2019, Lister was on duty under the supervision of Captain Michael Benneman, a white male. When Lister walked into the room at dinnertime, Benneman, who was feeding a dog pieces of steak, said, "Here, girl. Here, Latonia," while smacking his lips to make kissing noises. Lister reported this incident ("the April 7 incident")

to her immediate supervisor, Captain Victor Thompson. Lister later endured additional incidents she considered discriminatory, harassing, and retaliatory. Ultimately, Lister requested to bid out of her station.

In 2021, Lister sued the City under federal and state law for sex- and/or race-based discrimination and retaliation. Only Lister's Title VII discrimination and retaliation claims based on the April 7 incident proceeded to trial.

At the close of Lister's case-in-chief, the City moved for judgment as a matter of law. After the close of evidence, the district court heard arguments on the motion, denied it under Fed. R. Civ. P. 50, and submitted the sex- and race-based discrimination and retaliation claims to the jury.

After deliberating for nearly two hours, the jury returned the following verdict:

> We the Jury in the above-entitled matter hereby find as follows:
>
> QUESTION NO. 1: Did the plaintiff establish, by a preponderance of the evidence, that the incident on April 7, 2019, was severe or pervasive and objectively and subjectively offensive to a reasonable person when looking at the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with Latonia Lister's work performance?
>
> 1a.  Was it severe or pervasive?

Yes <u>X</u> No _____ (check one)

1b. Was it objectively and subjectively offensive to a reasonable person?

Yes <u>X</u> No _____ (check one)

*If "yes" to both 1a and 1b, move to question 1c. If "no" to either 1a or 1b, move to question 3.*

1c. Because you found that the April 7, 2019 incident was severe or pervasive and objectively and subjectively offensive to a reasonable person, please determine if you find that the incident was motivated by gender-based and/or race-based discrimination.

On the basis of gender: Yes _____ No <u>X</u> (check one)

On the basis of race: Yes _____ No <u>X</u> (check one)

*If "yes" to either one of these, move to question 2. If "no" to both, move to question 3.*

QUESTION NO. 2: Do you find that the defendant discriminated against the plaintiff in violation of Title VII?: (answer both subparts)

2a. On the basis of gender:
Yes _____ No ___<u>X</u>_ (check one)



2b. On the basis of race:
Yes _____ No __X__ (check one)

*Move to question 3.*

QUESTION NO. 3: Do you find, by a preponderance of the evidence, that the plaintiff was retaliated against for reporting the April 7, 2019 incident in violation of Title VII?:

Yes _____ No __X__ (check one)

*If "yes" to either 2a or 2b, or if "yes" to question 3, move to question 4.*

PART II: DAMAGES

QUESTION NO. 4: We find by a preponderance of the evidence that because the defendant violated Title VII, the plaintiff is entitled to the following amount of damages for pain and suffering:

$ _150k___ (if applicable, insert amount of damages)

*You are not required to award damages for pain and suffering.*

Dated: March__1__, 2024

_____
Foreperson

In sum, the jury found: (1) the April 7 incident was severe or pervasive and objectively and subjectively offensive to a reasonable person; but that (2) the incident was not motivated by race or gender; (3) the City did not

discriminate against Lister in violation of Title VII;[1] and (4) the City did not retaliate against Lister for reporting the April 7 incident in violation of Title VII. Despite finding no liability, the jury answered the damages question, awarding Lister $150,000 in damages.

After receiving the verdict in open court, the district court stated: "There is an inconsistency in the verdict . . . I'm going to need to figure out how we're going to resolve this inconsistency." The district court asked the jury to return to the jury room and took a brief recess.

After the recess, the district court called the jury back and asked the parties if they objected to polling the jury. Neither did. The district court read the verdict in open court and asked each juror three questions: (1) "Is this your true verdict?"; (2) "[D]o you find that the City did not discriminate against Ms. Lister on the basis of gender or race?"; and (3) "Is it your true and correct verdict that the City did not retaliate against Ms. Lister for the April 7, 2019 incident?". Each juror answered "yes" to all three questions. The district court did not poll the jury on damages. After completing the poll, the district court discharged the jury.

After the jury left, the district court told the parties that the damages award would not be able to stand because the jury "found no Title VII violation," but still gave the parties an opportunity to submit briefing on the issue.

Lister moved for a new trial in her briefing. The district court denied Lister's motion for a new trial. The court

---

[1] Per the charge's explicit instructions, the jury should not have answered Question 2 in light of the jury's finding that the incident was not motivated by race or gender. This error, however, is not at issue on appeal.

concluded that it could reconcile the verdict without resubmitting it to the jury, set aside the jury's damages award, and entered judgment for the City. Lister timely appealed.

## II.

Federal Rule of Civil Procedure 51 requires that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1). "When a party raises a contemporaneous objection to a jury instruction, we review the jury instruction either de novo or for abuse of discretion, depending on the nature of the error." *Chess v. Dovey*, 790 F.3d 961, 970 (9th Cir. 2015). When a party fails to timely object to a civil jury instruction, however, we review the instruction for plain error. *Id*.

Additionally, we review for abuse of discretion a district court's decision to resubmit a verdict to the jury for clarification or reconciliation. *See Mateyko v. Felix*, 924 F.2d 824, 827 (9th Cir. 1990). Denial of a motion for a new trial is also reviewed for abuse of discretion. *United States v. 99.66 Acres of Land*, 970 F.2d 651, 658 (9th Cir. 1992).

## III.

### A.

Lister argues that Jury Instruction Nos. 9 and 12 contained prejudicial errors. Because Lister raises her challenges to Jury Instruction Nos. 9 and 12 for the first time

on appeal, we review these jury instructions for plain error.[2] *See Chess*, 790 F.3d at 970.

Under plain error review, we consider "whether (1) there was an error; (2) the error was obvious; and (3) the error affected substantial rights." *C.B. v. City of Sonora*, 769 F.3d 1005, 1018 (9th Cir. 2014) (en banc). We may "consider the costs of correcting an error, and—in borderline cases—the effect that a verdict may have on nonparties." *Id.* "[T]he decision whether to correct a plain error under [Rule] 51(d)(2) is discretionary" and used only "to prevent a miscarriage of justice." *Id.* at 1018–19 (quotations and citations omitted). Plain errors are "rare." *Hoard v. Hartman*, 904 F.3d 780, 791 (9th Cir. 2018).

First, Lister argues that Jury Instruction No. 12 was erroneous because it failed to comport with the Manual of Model Civil Jury Instructions for the Ninth Circuit ("Model Instructions") No. 10.7 by omitting "necessary qualifying language regarding '[sexually][racially]' in its articulation of element 1." Second, Lister argues Jury Instruction Nos. 9 and 12 present mutually incompatible predicates of proof for Lister's hostile-work-environment claim. Neither argument has merit.

The district court used Model Instruction No. 10.7 as the basis of Jury Instruction No. 12. Model Instruction No. 10.7 states in pertinent part:

> The plaintiff seeks damages from the defendant for a hostile work environment caused by [sexual] [racial] [*other Title VII*

---

[2] Lister asserts she objected to these jury instructions below. But the record shows she objected only to the verdict form's question about a hostile work environment—not to the related jury instructions.

*protected characteristic*] harassment. The plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1.  the plaintiff was subjected to a [sexually] [racially] [*other Title VII protected characteristic*] hostile work environment by a [non-immediate supervisor] [co-worker]; and

2.  the defendant or a member of the defendant's management knew or should have known of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

MANUAL OF MODEL CIVIL JURY INSTRUCTIONS FOR THE DISTRICT COURTS OF THE NINTH CIRCUIT, No. 10.7 (9th Cir. 2017) (updated March 2025) ("Ninth Cir. Model Instructions").

By comparison, Jury Instruction No. 12 states in pertinent part:

The plaintiff seeks damages from the defendant for a hostile work environment caused by gender-based and/or race-based harassment. The plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1.  the plaintiff was subjected to a hostile work environment by immediate and/or non-immediate supervisor(s); and

2. the defendant or a member of the defendant's management knew or should have known of the harassment and failed to take prompt, effective remedial action reasonably calculated to end the harassment.

The omission of race and gender in the first element of Jury Instruction No. 12 does not render the instruction erroneous. Jury Instruction No. 12's opening paragraph refers to the protected characteristics of race and sex, clearly instructing the jury to assess the elements of a hostile work environment on these grounds. When Jury Instruction No. 12 is read as a whole, the exclusion of race and sex from the first element does not amount to an error—let alone a prejudicial one. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 802 (9th Cir. 2001) ("In evaluating jury instructions, prejudicial error results when, looking to the instructions as a whole, the substance of the applicable law was not fairly and correctly covered.") (cleaned up) (citation omitted). *see also* NINTH CIR. MODEL INSTRUCTIONS, Introduction ("The instructions in this Manual are models. They are not mandatory.").

Lister also argues that the district court committed plain error because Jury Instruction Nos. 9 and 12 contained "conflicting recitations of [the] plaintiff's burden of proof as to a Title VII hostile work environment claim." She asserts that Jury Instruction No. 9 specified that Lister had to show she was "subjected to slurs, insults, jokes or other verbal comments of a racial and sexist nature" to establish liability for a gender- or race-based hostile work environment, while Jury Instruction No. 12 omitted the "race" and "sex" elements from her burden of proof. Lister claims that these

instructions misled the jury into concluding that she could prove hostile work environment independent of race or gender and, therefore, be awarded damages.

Setting aside a lack of prejudice against Lister, her argument fails because there is no conflict between the two instructions. As discussed, Jury Instruction No. 12 directed the jury to assess whether Lister experienced a hostile work environment on the grounds of race and gender. Jury Instruction No. 9 sets forth the plaintiff's standard of proof for a gender- or race-based hostile-work-environment claim. Both are derived from the Ninth Circuit Model Instructions, which instruct that they be used together when appropriate. NINTH CIR. MODEL INSTRUCTIONS, No. 10.5. Accordingly, we find no plain error as to Jury Instruction Nos. 9 and 12. *See City of Sonora*, 769 F.3d at 1020–21; *Swinton*, 270 F.3d at 802.

## B.

Next, Lister argues that the district court abused its discretion when it did not resubmit the verdict to the still available jury. We disagree—the district court acted within its discretion when it polled the jury, discharged it, and reconciled the verdict.

When reviewing a district court's decision to resubmit or reconcile a jury's verdict, we first determine how to construe the jury's verdict under Fed. R. Civ. P. 49. *Floyd v. Laws*, 929 F.2d 1390, 1394–95 (9th Cir. 1991); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1031 (9th Cir. 2003). Consistent with the parties' and district court's characterization of the verdict during and post-trial, we consider it a special verdict. *Floyd*, 929 F.2d at 1396 ("[S]pecial verdicts often resemble general verdicts with interrogatories. . . . [A]s a matter of law, the interrogatories

submitted to the jury in this case constituted a special verdict, simply because that is what the trial court declared them to be."). We start by noting that Lister did not waive her objections to the verdict's inconsistencies. *See Pierce v. S. Pac. Trans. Co.*, 823 F.2d 1366, 1370 (9th Cir. 1987) (explaining that objections to inconsistent special verdicts need not be raised before jury discharge under Rule 49(a)).

When faced with an inconsistent special verdict, a district court "has a duty under the [S]eventh [A]mendment to harmonize" inconsistent answers in the special verdict "if such be possible under a fair reading of them." *Floyd*, 929 F.2d at 1396 (citing *Gallick v. Balt. & O.R.R. Co.*, 372 U.S. 108, 119 (1963). This duty includes an "obligat[ion] to try to reconcile the jury's findings by exegesis, if necessary." *Id.* "Only in the case of a fatal inconsistency may the court remand for a new trial." *Id.*

Alternatively, the district court may resubmit the special verdict to the jury if the jurors have not been discharged. *See id.* Unlike Rule 49(b) on general verdicts, Rule 49(a) on special verdicts does not expressly provide for resubmission. *See* Fed. R. Civ. P. 49. We have held that district courts have "discretion to resubmit the issue to the jury with a request for clarification" if the court notices the inconsistency before dismissing the jury. *Mateyko*, 924 F.2d at 827.

In *Duk v. MGM Grand Hotel, Inc.*, we held that "where the jury is still available, a district court's decision to resubmit an inconsistent verdict for clarification is within its discretion." 320 F.3d 1052, 1057 (9th Cir. 2003). We face the opposite question here: Is it within the district court's discretion *not* to resubmit an inconsistent verdict for clarification when the jury is still available? The answer is "yes."

The alleged inconsistency here is the jury's finding of no Title VII violation based on race and/or gender discrimination or retaliation in Questions 1-3 of the verdict alongside a damages award of $150,000 for Title VII violations in response to Question 4. Question 4 conditioned an award of damages on the jury's "find[ing] by a preponderance of the evidence that . . . the defendant violated Title VII." According to Lister, the jury found the City liable for a hostile work environment by awarding her damages, supported by the jury's finding in Question 1 that the April 7 incident was severe and pervasive and objectively and subjectively offensive. Lister argues that polling the jury failed to clarify the jury's findings because the jury did not have an opportunity to explain its reasoning or confirm its damages award. In response, the City notes that Lister asked the district court to neither poll the jury on the damages award nor resubmit the verdict. Moreover, as each juror—when polled—affirmed the relevant fact findings in the verdict, the City argues that resubmission for further deliberation would have been futile.

The district court's decision to poll the jury—with both parties' consent—clarified the seemingly inconsistent liability findings. The district court "polled the jury as to the substantive law violations" precisely because "the phrasing of the damages question appear[ed] inconsistent with the remainder of the verdict." The court recognized that the jury's apparent desire to compensate Lister for the severe and offensive April 7 incident did not necessarily conflict with the jury's factual findings that the incident was not racially or sexually discriminatory. By confirming the relevant findings of fact, the district court confirmed a clear statement of no liability from the jury. At that point, the

district court had sufficient legal grounds to discharge the jury and reconcile the verdict on its own.

Lister emphasizes that resubmission is "the better view" under our precedent, especially when the jury is still available. *Duk*, 320 F.3d at 1058. Because the jury was still available, Lister argues that clarifying the verdict remained the province of the jury, not the court. But, as *Duk* acknowledges, the Supreme Court has directed courts to reconcile inconsistent special verdicts when possible. *See Duk*, 320 F.3d at 1057 n.2 (citing *Gallick*, 372 U.S. at 119). *Duk* does not stand for the proposition that resubmission is mandatory when the jury is still available. Accordingly, the district court's decision to harmonize the verdict after polling the jury was consistent with precedent and not an abuse of discretion. Moreover, given the jury's finding that there was no race- or sex-based discrimination or retaliation, the jury's answer to Question 4 is best treated as surplusage.[3] *See Floyd*, 929 F.2d at 1397.

## C.

Finally, we consider whether the district court abused its discretion when it denied Lister's motion for a new trial. "[O]nly if all attempts at reconciliation fail, the court may

---

[3] The district court, relying on an unpublished case, ruled that the damages award could not be surplusage under *Floyd* because the jury did not violate an express direction to not answer Question 4, and instead set aside the damages award under *Freeman v. Chicago Park District*, 189 F.3d 613 (7th Cir. 1999). While *Floyd* does not hinge on an explicit "Stop Here" instruction, we need not address the issue in depth to resolve this case. In any event, as the City acknowledged during oral argument, there is no material difference between the courts' approaches in *Freeman* and *Floyd*. *See* May 12, 2025, Oral Argument recording at 21:12–21:46 (available at https://www.ca9.uscourts.gov/media/video/?20250512/24-3933/).

order a new trial." *Floyd*, 929 F.2d at 1396. Because neither the jury instructions nor the damages award rendered the jury's verdict here fatally inconsistent, the trial court correctly concluded that the verdict could be reconciled. *See supra* III.A., B. Accordingly, the trial court correctly denied Lister's motion for a new trial. *See Floyd*, 929 F.2d at 1396.

## IV.

Based on the foregoing, we affirm the district court's entry of judgment for the City of Las Vegas and affirm the district court's denial of Lister's motion for new trial.

**AFFIRMED.**